[No. C045571. Third Dist. July 7, 2005.]

In re the Marriage of DONALD and LYNN KLUG.
DONALD KLUG, Appellant, v.
LYNN KLUG, Respondent.

**COUNSEL**

Jay-Allen Eisen, C. Athena Roussos; Law Office of Larry Lawson and Larry Lawson for Appellant.

Kimball J. P. Sargeant; and Karen Pedersen Stevens for Respondent.

**OPINION**

**CANTIL-SAKAUYE, J.**—Donald Klug (Donald) appeals from a postjudgment order denying his motion for division of a community asset omitted from the marital termination agreement (MTA)—specifically, the $346,000 awarded to respondent Lynn Klug (Lynn) in settlement of her legal malpractice lawsuit against the couple's former attorney. Donald contends the court erred in ruling that the settlement proceeds were Lynn's separate property. He argues that the malpractice cause of action accrued during the marriage and the settlement proceeds were a community asset.

The trial court ruled that the $346,000 settlement was Lynn's separate property and not subject to division as an omitted asset because "the cause of action for the malpractice case against Mr. Christensen *accrued* after separation." (Italics added.) A trial court decision will be upheld even where it is based on an incorrect rule of law, as long as a sound basis for the decision exists. " 'In short, we will affirm a judgment or order if it is correct on any theory of law applicable to the case, even if it is right for the wrong reasons.' [Citation.]" (*Conservatorship of Davidson* (2003) 113 Cal.App.4th 1035, 1056 [6 Cal.Rptr.3d 702]; see *Davey v. Southern Pac. Co.* (1897) 116 Cal. 325, 329 [48 P. 117].) Because the trial court's factual findings also support the finding that Lynn's cause of action for legal malpractice *arose* after separation, we shall affirm the order.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Events During the Marriage:*

The parties were married on June 16, 1979. In January 1994, Donald engaged the services of Attorney Craig Christensen (Christensen) to set up a limited partnership to protect the couple's assets from possible litigation involving Donald's medical practice. Christensen prepared documentation for the Klug Family Limited Partnership (KFLP) under which Donald was the sole general partner and Lynn the sole limited partner. Lynn signed the documents creating the KFLP without meeting or speaking with Christensen.

In December 1996, approximately one month before the parties' separation, Donald, as general partner of the KFLP, withdrew $506,000 from the community brokerage account. He personally carried the funds to England and deposited them in a new "Fortis" (hereafter referred to as Garnick) trust account under his control on the Isle of Man. Earlier, Lynn had told Donald that she did not want the funds transferred overseas.

B. *Events After Separation:*

Donald and Lynn separated on January 13, 1997. At the time of separation, they had a 50 percent community property interest in two businesses known as Sierra Hemodialysis, Inc. (SHI) and Sierra Dialysis Services (SDS). The other 50 percent was owned by Donald's business partner.

Donald filed a petition for dissolution of the marriage on December 28, 1998. In late December 1998 or early January 1999, Donald sold their community interest in SHI and SDS, netting $2.528 million. In March 1999, Donald placed the proceeds of the sale in Christensen's corporate trust account before transferring $1.572 million into a charitable remainder trust in Donald's name in Lichtenstein. Donald also transferred $388,000 into a second charitable remainder trust in Lynn's name in Roseville, California. Christensen prepared the documents that created the charitable remainder trusts.

Also in March 1999, Donald transferred $350,000 of community funds to an account under his control on the Isle of Guernsey. Christensen prepared the documentation used to transfer this money.

On June 25, 1999, in the family law proceedings the court entered a bifurcated judgment of dissolution as to status only. In October 1999, Donald transferred $400,000 of community funds overseas to purchase an insurance policy to protect him against damages he anticipated in a pending lawsuit.

On December 28, 1999, Lynn filed a complaint for professional negligence and breach of fiduciary duty against Christensen, Donald, and others involved in the management, transfer and valuation of the community property. Lynn alleged Christensen "negligently and carelessly represented, advised and counseled her and failed to protect her rights and interests in the preparation of the KFLP." She further alleged that Christensen "failed to advise [her] of the probable and/or actual conflict of interest that existed in the preparation of the KFLP" and thereby caused her "to give up legal rights and interest in community assets that she would not have otherwise relinquished." She did not list the lawsuit in the MTA, nor did she inform Donald of the lawsuit or serve the complaint on him during negotiations for division of property in the dissolution proceedings. Lynn eventually dismissed Donald from the malpractice action.

In May 2000, Donald and Lynn entered into a stipulated judgment and MTA which purported to list and divide all community property assets and liabilities of the parties. The parties disagree on whether the MTA resulted in an equal division of the community assets.

In May 2002, Lynn settled her malpractice lawsuit against Christensen for $346,000. Donald filed his motion for division of the "omitted asset" four months later. He stated that he would not have signed the MTA had he known about the lawsuit.

C. *The Trial Court's Decision:*

After reviewing the "extensive" pleadings filed by Donald and Lynn and hearing oral argument, the trial court issued its written decision denying Donald's motion on October 3, 2003. The court began by framing the issues in terminology associated with the characterization of personal injury damages under the Family Code: "It all comes down to one question. Did the cause of action *arise* during marriage or post-separation? Did the cause of action *arise* by the mere drafting of the estate planning documents or when they were acted upon in derogation to Ms. Klug's rights?" (Italics added.) Later in the written decision, the court shifted to the statute of limitation terminology, stating that "[t]he general rule in a legal malpractice suit is that

the cause of action *accrues* when the negligent conduct causes damage." (Italics added.) Citing *Budd v. Nixen* (1971) 6 Cal.3d 195 [98 Cal.Rptr. 849, 491 P.2d 433] (*Budd*) and *Neel v. Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176 [98 Cal.Rptr. 837, 491 P.2d 421] (*Neel*), the court explained that a cause of action for legal malpractice *accrues* when the negligent conduct causes damage and the client discovers, or should discover, the facts that establish the cause of action. The court described the postseparation 1998 and 1999 offshore transfers of funds by Donald and Christensen as the basis for the malpractice suit, and found that the cause of action against Christensen did not *accrue* until after the parties separated. The court ruled that "[s]uch a finding makes the $346,000 recovery Ms. Klug's sole and separate property and not subject to division as an omitted asset."

## DISCUSSION

## I

### *Characterization of Tort Damages as Community or Separate Property*

 Family Code section 2556, which authorizes a motion to divide an omitted asset, is applicable to either community estate assets or community estate liabilities.[1] The operable term is "community." If the allegedly omitted asset is the separate property of one of the parties, it is not subject to division under section 2556.[2] For purposes of applying section 2556, the characterization of tort damages as separate or community property turns on when the cause of action arose.

The Family Code defines "community property" and "separate property" for purposes of characterization and division. Section 760 states the general rule: "Except as otherwise provided by statute, all property, real or personal, wherever situated, acquired by a married person during the marriage while domiciled in this state is community property."

---

[1] Family Code section 2556 provides: "In a proceeding for dissolution of marriage, for nullity of marriage, or for legal separation of the parties, the court has continuing jurisdiction to award community estate assets or community estate liabilities to the parties that have not been previously adjudicated by a judgment in the proceeding. A party may file a postjudgment motion or order to show cause in the proceeding in order to obtain adjudication of any community estate asset or liability omitted or not adjudicated by the judgment. In these cases, the court shall equally divide the omitted or unadjudicated community estate asset or liability, unless the court finds upon good cause shown that the interests of justice require an unequal division of the asset or liability."

[2] Undesignated statutory references are to the Family Code.

 "A cause of action to recover money damages, as well as the money recovered is a chose in action and therefore a form of personal property." (*Vick v. Dacorsi* (2003) 110 Cal.App.4th 206, 212, fn. 35 [1 Cal.Rptr.3d 626]; see *Parker v. Walker* (1992) 5 Cal.App.4th 1173, 1182–1183 [6 Cal.Rptr.2d 908]; see also Civ. Code, § 663 ["Every kind of property that is not real is personal"].) To determine whether a particular cause of action is separate or community property, we look to sections 781 and 2603 which guide courts in the characterization and division of personal injury damages.

 Section 781, subdivision (a), an exception to section 780, which characterizes personal injury damages as community property, reads in relevant part: "Money or other property received or to be received by a married person in satisfaction of a judgment for damages for personal injuries, or pursuant to an agreement for the settlement or compromise of a claim for those damages, is the separate property of the injured person *if the cause of action for the damages arose* as follows: [¶] . . . [¶] (2) *While either spouse, if he or she is the injured person, is living separate from the other spouse.*"[3] (Italics added.)

Section 2603 provides additional guidance on what constitutes community estate personal injury damages and how to divide them on dissolution.

"(a) 'Community estate personal injury damages' as used in this section means all money or other property received or to be received by a person in satisfaction of a judgment for damages for the person's personal injuries or pursuant to an agreement for the settlement or compromise of a claim for the damages, *if the cause of action for the damages arose during the marriage but is not separate property as described in Section 781*, unless the money or other property has been commingled with other assets of the community estate.

"(b) Community estate personal injury damages shall be assigned to the party who suffered the injuries unless the court, after taking into account the economic condition and needs of each party, the time that has elapsed since the recovery of the damages or the accrual of the cause of action, and all other facts of the case, determines that the interests of justice require another disposition. In such a case, the community estate personal injury damages shall be assigned to the respective parties in such proportions as the court determines to be just, except that at least one-half of the damages shall be assigned to the party who suffered the injuries." (Italics added.)

---

[3] Section 781 applies to compensation for damages arising from any tortious injury to a protected personal interest. (Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2004) ¶ 8.268, p. 8-68.)

 " 'The finding of a trial court that property is either separate or community in character is binding and conclusive on the appellate court if it is supported by sufficient evidence, or if it is based on conflicting evidence or upon evidence that is subject to different inferences; . . .' [Citations.]" (*Beam v. Bank of America* (1971) 6 Cal.3d 12, 25 [98 Cal.Rptr. 137, 490 P.2d 257] (*Beam*), see also *Millington v. Millington* (1968) 259 Cal.App.2d 896, 915 [67 Cal.Rptr. 128].)

## II

### *The Legal Malpractice Cause of Action*

 A cause of action is a legal obligation the plaintiff seeks to enforce against the defendant. (*Turner v. Milstein* (1951) 103 Cal.App.2d 651, 657 [230 P.2d 25], citing *Frost v. Witter* (1901) 132 Cal. 421, 426 [64 P. 705].) It does not come into existence or *arise* until all the elements have been established.[4] Moreover, a cause of action is not property and cannot be characterized until it exists. As a practical matter, a cause of action generally *arises* for the first time when the injury is suffered. (See Hogoboom & King, Cal. Practice Guide: Family Law, *supra*, ¶ 8:266, p. 8-67.) Once injury occurs, the injured party has a property interest which can be valued and characterized as separate or community property.

 "The elements of a cause of action in tort for professional negligence are: (1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence. [Citations.] [¶] If the allegedly negligent conduct does not cause damage, it generates no cause of action in tort. [Citation.] The mere breach of a professional duty, causing only nominal damages, speculative harm, or the threat of future harm—not yet realized— does not suffice to create a cause of action for negligence. [Citations.]" (*Budd, supra*, 6 Cal.3d at p. 200.) Actionable injury, however, "may occur at any one of several points in time subsequent to an attorney's negligence. Hence, as with other causes of action, the determination [of the date of injury] is generally a question of fact." (*Adams v. Paul* (1995) 11 Cal.4th 583, 588 [46 Cal.Rptr.2d 594, 904 P.2d 1205] (*Adams*).)

---

[4] We distinguish the phrase "arising during the marriage" as used in the Family Code from phrases like "arising out of a contract" or "arising in the performance of professional services." The former phrase refers to a time; the latter phrases refer to sources.

As we explained, the question whether the $346,000 settlement was community property subject to division under Donald's section 2556 motion turns on whether the legal malpractice cause of action arose during the marriage or after separation.

The parties and the trial court confused and sometimes used interchangeably the terms "arose" and "accrued" when referring to the legal malpractice cause of action. The distinction between "arose" and "accrue" is important because statutes of limitation have a different theoretical basis and practical effect than causes of action as defined by substantive case law. Once the distinction between the two terms is understood, it is clear the date Lynn's cause of action accrued for statute of limitations purposes was irrelevant to the question before the court in the family law proceeding—that is, when the cause of action arose.

■ Statutes of limitation are legislative enactments that limit the time period in which a plaintiff can bring his or her cause of action in court. They do not alter the legal obligation and injury underlying plaintiff's claim. Instead, statutes of limitation set the period of time beyond which a plaintiff may not seek redress in court. (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 395–396 [87 Cal.Rptr.2d 453, 981 P.2d 79] (*Norgart*).) For statute of limitations purposes, the time for filing a complaint starts to run on the date the cause of action accrued. Although a cause of action for legal malpractice usually arises and accrues at the same time, delayed discovery sometimes tolls the statute of limitation and changes the date of accrual. (*Budd, supra,* 6 Cal.3d at p. 201; Code Civ. Proc., § 340.6.)

■ "[T]he legislative goal underlying limitations statutes is to require diligent prosecution of known claims so that legal affairs can have their necessary finality and predictability and so that claims can be resolved while evidence remains reasonably available and fresh." (*Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 756 [76 Cal.Rptr.2d 749, 958 P.2d 1062] (*Jordache*), citing *Laird v. Blacker* (1992) 2 Cal.4th 606, 614, 618 [7 Cal.Rptr.2d 550, 828 P.2d 691].) With certain exceptions not applicable here, " 'the running of the statutory period does not extinguish the cause of action, but merely bars the remedy.' " (*Adams, supra,* 11 Cal.4th at p. 590, fn. 3.)

■ " 'Generally, a cause of action *accrues* and the statute of limitation begins to run when a suit may be maintained. [Citations.] "Ordinarily this is when the wrongful act is done and the obligation or the liability *arises*, but it does not 'accrue until the party owning it is entitled to begin and prosecute an action thereon.' " [Citation.] In other words, "[a] cause of action accrues 'upon the occurrence of the last element essential to the cause of action.' "

[Citations.]' [Citation.]" (*Howard Jarvis Taxpayers Assn. v. City of La Habra* (2001) 25 Cal.4th 809, 815 [107 Cal.Rptr.2d 369, 23 P.3d 601], italics added.) However, for policy reasons related to the nature of certain torts, the Legislature sometimes postpones accrual of a cause of action. "In cases of professional malpractice, . . . postponement of the period of limitations until discovery finds justification in the special nature of the relationship between the professional man and his client." (*Neel, supra,* 6 Cal.3d at pp. 187–188.)

 Although a cause of action for legal malpractice usually "arises" and "accrues" on the same date (*Budd, supra,* 6 Cal.3d at p. 201), the dates will be different in some factual circumstances. For example, the cause of action will *arise* when an attorney breaches the professional duty of care to plaintiff/client and causes immediate damage before plaintiff discovers that he or she has suffered a legally compensable injury. The same cause of action will not *accrue* until discovery takes place. We can think of no policy reason why the characterization of a property interest as community or separate should depend on the date of discovery of the injury rather than the date all the elements of the cause of action were established.

## III

### *When Lynn's Cause of Action Arose*

 We now consider the parties' arguments and the trial court's factual findings in light of our conclusion that characterization of the $346,000 settlement as separate or community property turns on the date Lynn's legal malpractice cause of action *arose*. The trial court's determination of when the malpractice plaintiff suffered actual injury is a question of fact. (*Jordache, supra,* 18 Cal.4th at p. 751; *Adams, supra,* 11 Cal.4th at p. 588; see, e.g., *Samuels v. Mix* (1999) 22 Cal.4th 1, 5, 20–21 [91 Cal.Rptr.2d 273, 989 P.2d 701].)

 On appeal, both parties emphasize the date the legal malpractice cause of action accrued. Donald argues that Lynn's cause of action accrued three years before separation when Christensen prepared the KFLP. He relies principally on Code of Civil Procedure section 340.6, subdivision (a), the statute of limitations for legal malpractice, in support of this argument.[5] Code

---

[5] Code of Civil Procedure section 340.6 provides:

"(a) An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first. In no event shall the time for commencement of legal action exceed four years except that the period shall be tolled during the time that any of the following exist:

of Civil Procedure section 340.6 addresses the commencement of a legal malpractice cause of action. For purposes of the statute of limitations, Code of Civil Procedure section 340.6 predicates commencement of a cause of action upon discovery of the wrongful act or omission and delineates the circumstances that may toll the limitations period. Donald relies on Code of Civil Procedure section 340.6, not for the commencement period in which to file a legal malpractice cause of action, but rather to define when a legal malpractice cause of action arises.

We have already explained that the statute of limitations is irrelevant to the question of when the cause of action arose for purposes of characterization and division. Alternatively, Donald argues that "the injury was complete when [Lynn] signed the KFP [sic] agreement and gave up her rights to management and control of [the] marital property." Lynn argues that Donald waived the bulk of his argument by failing to cite Code of Civil Procedure section 340.6 in the trial court, but insists the key question is when she discovered the facts establishing Christensen's wrongful acts and omissions.

Here the findings of fact and reasonable inferences drawn from those facts show that although two necessary elements of Lynn's cause of action—duty and breach—undoubtedly occurred during the marriage, Lynn did not "sustain[] any loss or injury legally cognizable as damages" until after she and Donald separated. (*Jordache, supra,* 18 Cal.4th at p. 762.)

The court recited the undisputed facts regarding Donald's postseparation transfer of funds offshore accomplished with Christensen's expertise in creating the trusts to receive those funds. The court found that "[i]n 1998, Dr. Klug, working in conjunction with Mr. Christenson [sic], sold the businesses and put the proceeds of the sale, $4,805,773.22 into Mr. Christenson's [sic] trust account. . . . Mr. Christenson [sic] and Dr. Klug subsequently moved approximately 2 million dollars of the proceeds to offshore accounts under Dr. Klug's exclusive control. In addition to the money transferred offshore, Mr. Christenson [sic] helped to create a $388,000

"(1) The plaintiff has not sustained actual injury;

"(2) The attorney continues to represent the plaintiff regarding the specific subject matter in which the alleged wrongful act or omission occurred;

"(3) The attorney willfully conceals the facts constituting the wrongful act or omission when such facts are known to the attorney, except that this subdivision shall toll only the four-year limitation; and

"(4) The plaintiff is under a legal or physical disability which restricts the plaintiff's ability to commence legal action.

"(b) In an action based upon an instrument in writing, the effective date of which depends upon some act or event of the future, the period of limitations provided for by this section shall commence to run upon the occurrence of such act or event."

irrevocable trust naming Ms. Klug as the beneficiary, but naming Dr. Klug as the trustee. Ms. Klug was not consulted prior to these post-separation transactions. A separate trust was placed in the name of Dr. Klug with an investment of 1,500,000 [*sic*]." The court expressly found that "[t]hese underlying actions were the basis of Ms. Klug's malpractice suit against Mr. Christenson [*sic*] that alleged that his actions prevented her from recovering one-half of the community estate."

Citing *Foxborough v. Van Atta* (1994) 26 Cal.App.4th 217 [31 Cal.Rptr.2d 525], *Hensley v. Caietti* (1993) 13 Cal.App.4th 1165 [16 Cal.Rptr.2d 837], and *Turley v. Wooldridge* (1991) 230 Cal.App.3d 586 [281 Cal.Rptr. 441], Donald insists that Lynn suffered actual harm from the alteration of legal relations at the time she signed the KFLP agreement. However, unlike the case before us, each of the cited cases involved some type of immediate, tangible effect on the parties' financial affairs. In the instant case, there was no evidence presented that Christensen's drafting of the KFLP had an immediate tangible effect on Lynn's financial affairs.

Lynn and Donald had been married nearly 15 years when they executed the KFLP in 1994. Donald hired Christensen to prepare legal documentation to protect the family assets. Lynn had no reason at that time to question Christensen's representation of her. She had no reason to seek outside counsel. Lynn accepted her husband's representation that the KFLP would help protect their community assets from litigation. Donald also cited Lynn's health problems as a reason for the establishment of the KFLP. Indeed, absent any evidence to the contrary, the trial court could reasonably infer at the time of the creation of the KFLP, given the family dynamics, the terms of the KFLP did not alter Lynn's financial affairs in any tangible way. Under these circumstances, the trial court could have reasonably determined Christensen's failure to advise of a potential conflict was no more than a nominal violation of his professional responsibilities before the parties separated. And even if Christensen had advised Lynn of the potential conflict of interest in his representation of both Lynn and Donald, Lynn, Donald's wife of nearly 15 years at the time, would likely have had faith in her husband and the attorney he hired to protect their assets and waived any conflict. In this context, Christensen's failure to advise Lynn of the potential conflict of interest resulted in no more than nominal damage.

Donald also claims on appeal that the first damaging transfer of funds occurred in 1996 before the parties separated—when he moved $506,000 into the Garnick trust in December 1996. He stresses that Lynn listed the $506,000 transfer in her opposition to his motion for division of an omitted asset as well as in her malpractice case against Christensen. In contrast, Donald asserted in the family law proceeding pertaining to the MTA that he

transferred these funds for the legitimate purpose of protecting them from potential exposure in litigation involving the community-owned businesses. The family law court agreed with Donald in a November 2001 ruling. It found that Donald's transfer of funds to the Isle of Man in 1996 was "reasonable under the circumstances," notwithstanding Donald's failure to notify Lynn or obtain her consent. According to the court, the transfer appeared to have "preserved the asset." Moreover, Donald made the transfer personally, within his authority under the KFLP, without the direct assistance of Christensen. With the exception of Donald's dispute with himself over the characterization of this one-time transfer of funds while the parties were married, the facts underlying Lynn's malpractice claim, the postseparation 1998 and 1999 offshore transfers of funds, are undisputed.

## IV

### *Unclean Hands*

Much of the argument in the trial court focused on the equities of Lynn claiming the $346,000 settlement as her separate property. In light of the trial court's factual findings on when the malpractice cause of action arose, we recognize that we need not reach this issue; nevertheless, we agree with Lynn that Donald's postseparation financial transfer conduct would bar him from claiming an interest in the settlement proceeds in a section 2556 motion.

Christensen, at Donald's request, facilitated Donald's transfer of assets by creating the KFLP with Donald as the sole general partner. Donald, postseparation, took full advantage of the situation and with the assistance of Christensen transferred large amounts of community money overseas in his own name. Arguably, Donald was able to secure a disproportionately large share of the community property for himself. Lynn made clear that the settlement obtained from Christensen represented that portion of her half of the community estate that she was unable to recover in the dissolution proceedings as a result of Christensen's malpractice. By his section 2556 motion, Donald attempted to obtain at least a 50 percent share of this equalizing payment notwithstanding he already received his, if not more than, fair share of the community estate. "Family courts are courts of equity and there is a basic principle of equity that one cannot take advantage of one's own wrong." (*In re Marriage of Schaffer* (1999) 69 Cal.App.4th 801, 811 [81 Cal.Rptr.2d 797]; see Civ. Code, § 3517.) It was Donald's actions, with Christensen's aid, in transferring property offshore that resulted in the injury Lynn claimed in her action against Christensen. Although Christensen was negligent in his representation of Lynn, it was Donald who benefited from that negligence. Under these circumstances, it would be inequitable for Donald to benefit further by sharing in Lynn's settlement in the malpractice action.

## DISPOSITION

The judgment (order) is affirmed. Respondent is awarded all costs on appeal. (Cal. Rules of Court, rule 27(a).)

Morrison, Acting P. J., and Robie, J., concurred.