In the

# United States Court of Appeals
## For the Seventh Circuit

Nos. 09-2280, 09-3020

YAO -WEN CHANG, *et al.*,

*Plaintiffs-Appellants*,

*v.*

BAXTER HEALTHCARE CORPORATION, *et al.*,

*Defendants-Appellees*.

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
MDL No. 986 JFG—**John F. Grady**, *Judge*.

SUBMITTED FEBRUARY 12, 2010—DECIDED MARCH 26, 2010

Before POSNER, EVANS, and TINDER, *Circuit Judges*.

POSNER, *Circuit Judge*. This is a parallel case to *Abad v. Bayer Corp.*, 563 F.3d 663 (7th Cir. 2009), decided by this panel last year. The case was dismissed by the district court, and the plaintiffs have appealed. Ordinarily when all parties to an appeal are represented by counsel, the court directs oral argument unless the parties waive argument and we accept the waiver. But when, as in this case, an appeal is closely related to an earlier appeal,

or is successive to it, we are more likely to deny oral argument on the ground that "the facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument." Fed. R. App. P. 34(a)(2)(C). We have decided to do that in this case.

*Abad* was a diversity (technically an "alienage," 28 U.S.C. § 1332(d)(2)(B)) class action on behalf of several hundred Argentines, consolidating a number of suits that had been filed in various U.S. states and transferred by the multidistrict panel to the federal district court in Chicago, pursuant to 28 U.S.C. § 1407, for inclusion in *In re Factor VIII or IX Concentrate Blood Products Litigation*. That is the name that has been given to the pretrial proceedings in a large number of products-liability suits by hemophiliacs who had been infected with HIV (the virus that causes AIDS) that had gotten into the clotting factor that persons afflicted with hemophilia inject into their bloodstreams in order to control bleeding. The plaintiffs charged that the defendants—the manufacturers of the clotting factors—had failed to eliminate HIV from the blood of donors from which the clotting factors had been made, as they could and should have done by applying heat in the manufacturing process.

The class members in *Abad* had acquired and injected and become infected by the contaminated clotting factors in Argentina, and the district court granted the defendant's motion to dismiss the action on the ground of *forum non conveniens*—the doctrine that allows a court to dismiss a suit if there are strong reasons for believing that

it should be litigated in the courts of another, normally a foreign, jurisdiction, in *Abad* the courts of Argentina. We affirmed.

The district court had deferred ruling on the defendant's motion until completion of the plaintiffs' pretrial discovery. The defendant's discovery would have to be conducted in Argentina because that was where the members of the class lived. So while depositions and other documents obtained in the plaintiffs' discovery would have to be translated into Spanish if the suit was litigated in Argentina, documents obtained in the defendant's discovery in Argentina would have to be translated into English if the case was tried in Chicago.

The plaintiffs argued that under Argentine choice of law rules, the substantive law that would be applied if the case were litigated in an Argentine court would be American rather than Argentine law. If true, this would, we said, have been a powerful argument for leaving the case in Chicago. But as near as we were able to determine, it was false. Argentine law would apply wherever the case was tried; and especially because of the dearth of relevant Argentine precedents or other sources of law, the Argentine court would probably do a better (more authentic, legitimate, authoritative) job of applying (if necessary creating) Argentine law than an American court. And we noted that the presumption in favor of a plaintiff's choice of the court in which to litigate (a presumption based in part on the costs and delay involved in restarting a case in another court) is weakened when the plaintiffs are foreign and could

litigate the case in their home court. Thus on balance Argentina was the more convenient, the more suitable, forum for the litigation.

The present case, filed originally in California by residents of Taiwan but transferred by the multidistrict panel to the district court in Chicago with the other clotting-factor suits for pretrial proceedings, is similar to *Abad*, although it adds a breach of contract claim to the tort claims. (Like *Abad*, it is actually a series of cases that have been consolidated for purposes of pretrial proceedings.) The main tort claim is that the defendants acquired blood from high-risk donors, processed it improperly in California where they manufactured clotting factors, and after discovering that the factors were contaminated by HIV nevertheless continued to distribute the product in foreign countries while withdrawing them from distribution in the United States. Thus, like the plaintiffs and class members in the *Abad* case, the plaintiffs in this case, or the decedents whom they represent, reside, and obtained and injected the clotting factor, in a foreign country. The plaintiffs also charge that the defendants fraudulently induced them to enter into a settlement agreement that released the defendants from liability in exchange for paying $60,000 to each plaintiff. The breach of contract claim alleges violation of a term of the settlement.

The district judge dismissed some of the plaintiffs' claims as untimely and the others on the ground of *forum non conveniens*. Although a dismissal on the latter ground is without prejudice, it is appealable, illustrating that the

"rule" that dismissals without prejudice are nonfinal and therefore nonappealable under 28 U.S.C. § 1291 is a Swiss cheese. See *Schering-Plough Healthcare Products, Inc. v. Schwarz Pharma, Inc.*, 586 F.3d 500, 506 (7th Cir. 2009); *Taylor-Holmes v. Office of Cook County Public Guardian*, 503 F.3d 607, 609-10 (7th Cir. 2007). In *Mañez v. Bridgestone Firestone North American Tire, LLC*, 533 F.3d 578, 584 (7th Cir. 2008), we compared dismissal on grounds of *forum non conveniens* to "a dismissal for lack of personal or federal subject-matter jurisdiction, which, while fore-closing future litigation of the matter in the court issuing the order, does not preclude a plaintiff from refiling and litigating in a proper forum." And such dismissals, though without prejudice, are of course appealable.

The critical issue so far as the dismissals on the merits are concerned is choice of law. When a diversity case is transferred by the multidistrict litigation panel, the law applied is that of the jurisdiction from which the case was transferred, in this case California. *In re Air Disaster at Ramstein Air Base, German*y, *on 8/29/90*, 81 F.3d 570, 576 (5th Cir. 1996); *Johnson v. Continental Airlines Corp.*, 964 F.2d 1059, 1063 n. 5 (10th Cir. 1992); see also *Ferens v. John Deere Co.*, 494 U.S. 516, 521-31 (1990); *Van Dusen v. Barrack*, 376 U.S. 612, 633-39 (1964); *International Marketing, Ltd. v. Archer-Daniels-Midland Co.*, 192 F.3d 724, 729 (7th Cir. 1999); Larry Kramer, "Choice of Law in Complex Litigation," 71 *N.Y.U. L. Rev.* 547, 552 (1996). The plaintiffs' claims that the district judge dismissed on the merits he dismissed as untimely under California law.

California statutes of limitations don't begin to run until the plaintiff discovers, or should in the exercise of reasonable diligence have discovered, that he has a claim against the defendant. *Norgart v. Upjohn Co.*, 981 P.2d 79, 88-89 and n. 3 (Cal. 1999); *Jolly v. Eli Lilly & Co.*, 751 P.2d 923, 927-28 (Cal. 1988); *K.J. v. Arcadia Unified School District*, 92 Cal. Rptr. 3d 1, 10 (Cal. App. 2009). But the discovery rule would not save the plaintiffs' tort claims from dismissal for untimeliness. True, the plaintiffs argue that they didn't have enough information on which to base a suit until a *New York Times* article about the contamination of clotting factors with HIV was published on May 22, 2003, and therefore that their suit, filed in 2004, was timely, since the California statute of limitations for personal-injury claims is two years. Cal. Civ. P. Code § 335.1; *Fox v. Ethicon Endo-Surgery, Inc.*, 110 P.3d 914, 921 n. 3 (Cal. 2005). But as the district court found, the plaintiffs had had a reasonable basis to suspect that they had a cause of action more than five years before the article appeared, when their counsel had begun negotiations with two of the defendants to settle negligence claims arising from the contamination of the defendants' clotting factors with HIV. These negotiations culminated in the settlement in 1998 on which the plaintiffs' breach of contract claim is based.

The plaintiffs argue that the limitations period should have been tolled by defendants' "fraudulent concealment" because when entering into the settlement agreement they said they had done nothing wrong and that they were offering financial aid purely as a humanitarian gesture. The plaintiffs are mistaken. Denial of liability

when negotiating a settlement agreement is the norm; it is not evidence of fraudulent concealment of anything.

The district court was also correct in ruling in the alternative that a California court would apply ("borrow" is the technical legal term) the Taiwanese 10-year statute of repose, because the plaintiffs' tort claims arose under Taiwanese law. The hemophiliacs whom the plaintiffs represent were infected in the 1980s, more than a decade before these suits were brought.

A statute of repose, which is designed specifically for products-liability suits, cuts off liability after a fixed number of years, whether or not the plaintiff should have discovered within that period that he had a claim. A statute of repose thus overrides the discovery rule. It does this because of the long latency of many product defects, which can under a discovery rule impose vast and unpredictable products liability on manufacturers. See *Eaton v. Jarvis Products Corp.*, 965 F.2d 922, 929-31 (10th Cir. 1992); *Pullum v. Cincinnati, Inc.*, 476 So. 2d 657, 659-60 (Fla. 1985); *Davis v. Whiting Corp.*, 674 P.2d 1195-96 (Ore. App. 1984).

If the plaintiffs' tort claims arose in Taiwan, California law makes the Taiwanese statute of repose applicable to those claims. The reason is California's "borrowing" statute, which—sensibly designed to discourage forum shopping—provides that "when a cause of action has arisen in another State, or in a foreign country, and by the laws thereof an action thereon cannot there be maintained against a person by reason of the lapse of time, an action thereon shall not be maintained against him in

this State, except in favor of one who has been a citizen of this State, and who has held the cause of action from the time it accrued." Cal. Civ. P. Code § 361; see *McCann v. Foster Wheeler LLC*, 2010 WL 547274, at *8-10 (Cal. Feb. 18, 2010); cf. *Flowers v. Carville*, 310 F.3d 1118, 1123 (9th Cir. 2002) (Nevada law); *Employers Ins. of Wausau v. Ehlco Liquidating Trust*, 723 N.E.2d 687, 694 (Ill. App. 1999). The plaintiffs argue that their claims arose in California, not Taiwan, because it was in California that the defendants failed to process their clotting factors in a way that would prevent contamination by HIV. But with immaterial exceptions (such as trespass, where purely nominal damages can be awarded even if there is no tangible harm, because "a continuing trespass may ripen into a prescriptive right and deprive a property owner of title to his or her land," *Kronos, Inc. v. AVX Corp.*, 612 N.E.2d 289, 293 (N.Y. 1993); see also W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 13, p. 75 (5th ed. 1984); *Restatement (Second) of Torts* § 163 and comment d (1965)), there is no tort without an injury. That is the rule in California, e.g., *Buttram v. Owens-Corning Fiberglas Corp.*, 941 P.2d 71, 77 n. 4 (Cal. 1997); *United States Liability Ins. Co. v. Haidinger-Hayes, Inc.*, 463 P.2d 770, 776, (Cal. 1970); *In re Marriage of Klug*, 31 Cal. Rptr. 3d 327, 333 (Cal. App. 2005), as elsewhere. E.g., *Kamelgard v. Macura*, 585 F.3d 334, 340-41 (7th Cir. 2009) (Illinois law); *Abad v. Bayer, supra*, 563 F.3d at 669; *Parris v. State Farm Mutual Automobile Ins. Co.*, 494 S.E.2d 244, 246-47 (Ga. App. 1997); Keeton et al., *supra*, § 30, pp. 164-65. The tort of which the plaintiffs complain thus occurred in Taiwan. See *McCann v. Foster Wheeler LLC, supra*, at *10 and n. 5; see also *Rajala v. Don-*

*nelly Meiners Jordan Kline, P.C.*, 193 F.3d 925, 928 (8th Cir. 1999) (Missouri law).

The case on which the plaintiffs principally rely, *McKee v. Dodd*, 152 Cal. 637 (1908), was a breach of contract case rather than a tort case. The breach had been committed in New York, the place where payment was due, and the suit was held to have arisen there. A claim of breach of contract is complete when the breach is committed, and indeed one can obtain a judgment in a breach of contract action without proving any loss at all. E.g., *Troyk v. Farmers Group, Inc.*, 90 Cal. Rptr. 3d 589, 628 n. 36 (Cal. App. 2009); *Movitz v. First National Bank of Chicago*, 148 F.3d 760, 765 (7th Cir. 1998); E. Allan Farnsworth, *Contracts* § 12.8, p. 757 (4th ed. 2004). Anyway the plaintiff was in New York when the breach occurred, so the injury also occurred there, just as it occurred in Taiwan in the present case.

The plaintiffs concede that the suit "accrued" in Taiwan but deny that it "arose" there. They misunderstand those terms. A claim "accrues" when the statute of limitations begins to run; a claim that could not have been discovered by the date on which it arose will not (in a jurisdiction with a discovery rule) accrue then. E.g., *Norgart v. Upjohn Co., supra*, 981 P.2d at 88; *United States Liability Ins. Co. v. Haidinger-Hayes, Inc., supra*, 463 P.2d at 775-77; *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir. 1990). The terms "arose" and "accrued" often are conflated, because, other than in cases in which the discovery rule is invoked, usually the date on which the cause of action "accrues" is also the date on which it "arises." *In re*

*Marriage of Klug, supra*, 31 Cal. Rptr. 3d at 334. The plaintiffs' claims arose in Taiwan, and that's all that matters.

California courts would apply the Taiwanese statute of repose in this case even if there were no borrowing statute. Applying the "balancing of interests approach" that California courts use to resolve conflict of laws issues, a California court would reason that if Taiwan will not provide a remedy to its own citizens, there is no reason for California to do so. See *McCann v. Foster Wheeler LLC*, *supra*, at *11, *13, *15-16; cf. *Nelson v. Sandoz Pharmaceuticals Corp.*, 288 F.3d 954, 965 (7th Cir. 2002); *Macurdy v. Sikov & Love, P.A.*, 894 F.2d 818, 821 (6th Cir. 1990). What interest has California in treating Taiwanese plaintiffs more generously than Taiwan treats them?

We turn to the claims that the district court dismissed not as untimely but on the basis, rather, of *forum non conveniens*. One set of claims arises from the settlement agreement that provided the plaintiffs with $60,000 apiece as compensation for the injuries caused by the contaminated clotting factors. The agreement contained what the parties call a "scale-up" clause but would more commonly be referred to as a "most favored nation" clause. The clause required the defendants to increase the compensation in the settlement agreement to whatever level the defendants agreed to in later settlements with other clotting-factor claimants. The contract was negotiated and signed in Taiwan, and while the plaintiffs argue that the scale-up clause is clear on its face and applicable to their claims, the contract actually is ambiguous. For it is silent on whether the reference to

other claimants who by receiving higher compensation increase the plaintiffs' entitlement is just to other *Taiwanese* claimants, as the defendants argue, or to other claimants anywhere in the world, as the plaintiffs argue—rather implausibly, given the enormous global variance in damages awards. Evidence beyond the language of the settlement agreement will be necessary to disambiguate the clause, and it seems that most of the persons who are in a position to give such evidence live in Taiwan—the plaintiffs' Taiwanese counsel who negotiated the settlement, a Taiwanese patient representative, members of the Taiwanese department of health, defendant's Taiwanese outside counsel, and an employee of defendants in Taiwan— while only two live in the United States.

Taiwanese law makes it difficult to gather evidence for use in a trial in a foreign country because Taiwan is not a party to the Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, http://hcch.net/index_en.php?act=conventions.text&cid=82 (visited Mar. 17, 2010); see 10B *Federal Procedure* § 26:906 (Lawyers ed. 2010). The alternative method of obtaining evidence in a foreign country—sending a letter rogatory to the foreign court, United States Department of State, "Taiwan Judicial Assistance," http://travel.state.gov/law/ info/judicial/judicial_669.html (visited Mar. 13, 2010)— seems not to be a very satisfactory means of obtaining evidence from Taiwan. See Kenneth C. Miller & Nancy Pionk, "The Practical Aspects of Litigating against Foreign Corporations," 54 *J. Air L. & Commerce* 123, 146-49 (1988);

*Hayes Bicycle Group, Inc. v. Muchachos Int'l Co.*, 2008 WL 4830570, at *2-3 (E.D. Wis. Oct. 31, 2008).

The only circumstance that would favor holding the trial in California rather than in Taiwan would be the greater convenience for the defendants, since they are American companies. But as they don't want the case to be tried in California, or indeed anywhere else in the United States, really there is nothing in favor of the American forum. And as we pointed out in *Abad*, "when application of the doctrine [of *forum non conveniens*] would send the plaintiffs to their home court, the presumption in favor of giving plaintiffs their choice of court is little more than a tie breaker." 563 F.3d at 667. There is no tie here.

The remaining claim that the district court dismissed on grounds of *forum non conveniens* is the products-liability claim of Chen-Chen Huang that may or may not be time-barred. It is an unusual claim because Huang is not a hemophiliac or a hemophiliac's representative. Rather, she claims to have been infected by sexual relations with her boyfriend who was a hemophiliac (now dead) and is believed to have become infected with HIV from clotting factors manufactured by one of the defendants. The critical issue at trial is likely to be the likelihood that sex with her boyfriend was responsible for Huang's contracting HIV. The pertinent evidence is in Taiwan and for the reason noted earlier would be difficult to obtain for use in a trial in the United States.

A complication is that whether Huang's claim would be time-barred if litigated in a Taiwanese court is uncertain.

The defendants say they "candidly told the district court that they do not know whether testimony in Taiwan from, for example, medical providers might impeach Ms. Huang's assertion that she did not know of her HIV infection until 2002, when such testimony could give rise to a limitations defense." Huang responds that this wishy-washy statement fails to satisfy the defendants' burden of proving that Taiwan is an "adequate" alternative forum, and if it isn't then dismissal on grounds of *forum non conveniens* was improper.

The Supreme Court has said that "if the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all," such dismissal is indeed improper, *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 (1981), as in such cases as *Nemariam v. Federal Democratic Republic of Ethiopia*, 315 F.3d 390, 394-95 (D.C. Cir. 2003), and *El-Fadl v. Central Bank of Jordan*, 75 F.3d 668, 677-79 (D.C. Cir. 1996). The alternative forum must provide the plaintiff with "a fair hearing to obtain some remedy for the alleged wrong." *Stroitelstvo Bulgaria Ltd. v. Bulgarian-American Enterprise Fund*, 589 F.3d 417, 421 (7th Cir. 2009). But the relief need not be as comprehensive or as favorable as a plaintiff might obtain in an American court. *Id.*; see also, e.g., *Piper Aircraft Co. v. Reyno, supra*, 454 U.S. at 249; *Capital Currency Exchange, N.V. v. National Westminster Bank PLC*, 155 F.3d 603, 610-11 (2d Cir. 1998). It would be odd to subject the defendant to an inconvenient forum merely to increase the chances that the plaintiff will prevail on the merits. As the Supreme Court explained in the *Piper Aircraft* case, "jurisdiction and venue requirements are often easily satisfied. As a result, many

plaintiffs are able to choose from among several forums. Ordinarily, these plaintiffs will select that forum whose choice-of-law rules are most advantageous. Thus, if the possibility of an unfavorable change in substantive law is given substantial weight in the *forum non conveniens* inquiry, dismissal would rarely be proper." 454 U.S. at 250.

But the cases suggest that if the plaintiff's suit would be time-barred in the alternative forum, his remedy there is inadequate—is no remedy at all, in a practical sense—and in such a case dismissal on grounds of *forum non conveniens* should be denied unless the defendant agrees to waive the statute of limitations in that forum and the waiver would be enforced there. *Norex Petroleum Ltd. v. Access Industries, Inc.*, 416 F.3d 146, 159 (2d Cir. 2005); *Bank of Credit & Commerce Int'l (Overseas) Ltd. v. Bank of Pakistan,* 273 F.3d 241, 246-47 (2d Cir. 2001); *Mercier v. Sheraton Int'l, Inc.*, 935 F.2d 419, 426 (1st Cir. 1991); *Kontoulas v. A.H. Robins Co.*, 745 F.2d 312, 316 (4th Cir. 1984); but see *Yavuz v. 61 MM, Ltd.*, 576 F.3d 1166, 1182 (10th Cir. 2009). There is an exception, however, for cases in which a plaintiff seeks to defeat dismissal by waiting until the statute of limitations in the alternative forum has expired and then filing suit in his preferred forum (with the longer limitations period) and arguing that the alternative forum is inadequate. *Compania Naviera Joanna SA v. Koninklijke Boskalis Westminster NV*, 569 F.3d 189, 202-03 (4th Cir. 2009); cf. *In re Bridgestone/Firestone, Inc.*, 420 F.3d 702, 705-07 (7th Cir. 2005). That is different from the case in which as a consequence of delays inherent in litigation the defendant has acquired an airtight defense of untimeliness in the

alternative forum since the litigation began. See *Aguinda v. Texaco, Inc.*, 303 F.3d 470, 475, 478-79 (2d Cir. 2002). The basis for dismissal on grounds of *forum non conveniens* should be the superior convenience of the alternative forum rather than a difference in substantive law that spells doom for the plaintiff's case if it is sent there.

The exception is inapplicable in this case. But this can't help Huang. If her claim is time-barred in Taiwan, it is time-barred in California because, as we know, the California courts would apply the Taiwanese limitations period to a tort claim by a Taiwanese injured in Taiwan. So even if, as she fears, something in Taiwan's statute of limitations will bar her claim if she is shunted to a Taiwanese court, that something would be applied by a California court to bar a suit in California.

We can imagine a case in which the court chosen by the plaintiff has a longer statute of limitations than the court preferred by the defendant and would not apply the other jurisdiction's shorter statute. Then dismissal on grounds of *forum non conveniens* would be tantamount to dismissal on the merits, and if so it would matter what the thinking behind the shorter statute of limitations was. Suppose it was purely procedural or institutional—the jurisdiction with the shorter limitations period lacked confidence that its courts could handle stale evidence but this misgiving was not shared by the court in which the plaintiff had sued. Then no jurisdiction's policy would be served by sending the plaintiff to a court in which his case would be doomed. This case is different because the shorter statute (shorter

because the statute of repose caps the conventional statute of limitations that begins to run upon discovery) expresses a substantive policy that the plaintiff is trying to avoid. Refusing to invoke *forum non conveniens* would give the plaintiff a gratuitous substantive advantage. Convenience favors Taiwan and the statute of limitations applicable to this suit will be the same whether the case is tried there or in California.

AFFIRMED.