Filed 1/29/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| OMAR KADER, | B326830 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 22STCV17630) |
| v. | |
| SOUTHERN CALIFORNIA MEDICAL CENTER, INC., et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Daniel Murphy, Judge.  Affirmed.

Quinn Emanuel Urquhart & Sullivan, Michael E. Williams, Dylan C. Bonfigli and Marie M. Hayrapetian for Defendants and Appellants.

The Law Offices of Vincent Miller, Vincent Miller and Nick Sage for Plaintiff and Respondent.

_____

An employee signed an arbitration agreement with his employer in the regular course of his employment, without disclosing that he was being subjected to sexual harassment and assault. Congress subsequently enacted the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act (the Act; 9 U.S.C. §§ 401, 402), which invalidates predispute arbitration agreements in certain circumstances. Following the effective date of the Act, the employee sued the employer and other defendants for claims arising from the alleged sexual conduct. The defendants filed a motion to compel arbitration, which the trial court denied based on the Act. On appeal, the defendants contend the Act does not invalidate the arbitration agreement in this case because the alleged sexual conduct constituted a "dispute," which preexisted the parties' arbitration agreement and the effective date of the Act. We conclude the date that a dispute has arisen for purposes of the Act depends on the unique facts of each case, but a dispute does not arise merely from the fact of injury. For a dispute to arise, a party must first assert a right, claim, or demand. There is no evidence of a disagreement or controversy in this case until after the date of the arbitration agreement and the effective date of the Act, when the employee filed charges with the Department of Fair Employment and Housing (DFEH) in May 2022.[1] Therefore, the predispute arbitration agreement is invalid, and the order denying the motion to compel arbitration is affirmed.

---

[1] Effective June 30, 2022, after the events in this case, the agency's name changed to the Civil Rights Department. (Gov. Code, § 12901.)

## FACTUAL AND PROCEDURAL HISTORY

Southern California Medical Center, Inc., is a community clinic that provides care to low income and medically uninsured patients. The Center's chief medical officer is physician Mohammad Rasekhi. In July 2016, the Center hired plaintiff and respondent Omar Kader to serve as the chief financial officer. Approximately 18 months later, Kader became the chief operating officer. In May 2018, Kader signed his first arbitration agreement, which is not at issue in this case.

Kader has alleged that in July 2018, Rasekhi said Kader had a pretty face, was a good-looking man, and his slacks were nice and tight. Rasekhi asked if Kader watched porn and talked about guys playing with each other at the gym steam room. He stared at Kader's buttocks while wetting his lips with his tongue.

On November 18, 2018, Rasekhi allegedly forced Kader to perform oral sex, and on April 17, 2019, forced him to touch Rasekhi's genitals and perform oral sex. Rasekhi threatened to fire Kader if he revealed the incidents to anyone. Kader kept the incidents to himself out of shame and fear of losing his job.

On June 25, 2019, Kader signed a new arbitration agreement agreeing to arbitrate "employment disputes" with the Center, the human resources provider Modern HR, Inc., or any of their respective employees or officers. The parties agreed that any arbitration would be governed by the Federal Arbitration Act (FAA; 9 U.S.C., §§ 1–16). The agreement provided that if Kader filed a lawsuit containing claims that were subject to arbitration and claims that were not subject to arbitration, the arbitrable claims would be resolved before the nonarbitrable claims.

3

Eight subsequent incidents of sexual harassment and sexual assault allegedly took place between September 2019 and February 28, 2022. Kader alleged that in July 2021, the Center's chief executive officer Sheila Busheri began making false statements about Kader to justify retaliating against him.

The Act became effective on March 3, 2022. Kader alleged Rasekhi opened Kader's blazer on March 16, 2022, and pinched his nipple while wetting his lips with his tongue.

In May 2022, Kader filed a complaint with the DFEH and requested an immediate right-to-sue notice. DFEH closed the complaint and issued a right-to-sue notice on May 27, 2022.

That same day, Kader filed a complaint against the Center, Rasekhi, Busheri, six of the Center's board members, Modern HR, and two additional entities. He alleged causes of action for sexual harassment, discrimination on the basis of race, national origin and/or sex, failure to prevent discrimination and harassment, retaliation, intentional infliction of emotional distress, negligence, sexual battery, and defamation.

It is unclear from the complaint whether Kader complained about Rasekhi's conduct to anyone other than Rasekhi. Kader alleged he felt that he could not report Rasekhi's conduct to the Center or its related entities without suffering retaliation. Kader also alleged, however, that he reported Rasekhi's inappropriate conduct to the Center and a related entity, and he objected to the defendants' racism and discriminatory hiring practices. In response to Kader's reports and complaints, the Center and the other entities retaliated against him through a demotion, a pay cut, and retraction of a bonus. In addition, Busheri began making false statements in July 2021 in retaliation against

4

Kader for resisting Rasekhi's conduct and objecting to discrimination.

The Center, Rasekhi, Busheri, and the six board members (collectively the Center defendants) filed a motion to compel arbitration. They argued that the Act did not apply because: (1) Kader's claims accrued prior to the effective date of the Act, and (2) the arbitration agreement was signed after the conduct giving rise to sexual harassment or sexual assault took place.

In support of the motion, they submitted Busheri's declaration stating that Kader never made any complaint to her about Rasekhi's conduct during his employment. She was not aware of any complaints Kader made to Modern HR about any of the Center's officials or employees. In fact, during the time of the alleged incidents, Kader sent text messages to Busheri expressing support of Rasekhi.[2]

Kader opposed the motion brought by the Center defendants. He argued that the Act covered disputes or claims arising or accruing after March 3, 2022, and under the continuing violation doctrine, his causes of action accrued after March 3, 2022. He also argued that the arbitration agreement was contrary to public policy, unconscionable, and there was a possibility of conflicting rulings resulting from litigation with third parties.

Kader submitted his own declaration in support of the opposition. He stated that when he refused to work with

---

[2] Modern HR also filed a motion to compel arbitration, which is not at issue in this appeal. Modern HR submitted evidence showing the company ceased to be a provider for the Center and had no relationship with Kader, the Center, or any other defendant after January 2022.

5

Rasekhi, travel alone with him, or be behind closed doors with him, Rasekhi and Busheri began to retaliate against him. He stated that the defendants were aware of the allegations against Rasekhi based on the complaints of several other employees.

The trial court initially granted the motion, finding that each alleged sexual assault was independently actionable, and therefore, all but one claim accrued prior to the Act. The court stayed litigation on claims that arose after March 2, 2022, pending arbitration on the claims that arose before March 2, 2022.

Kader petitioned this appellate court for a writ of mandate, which this court granted. This court ordered the trial court to reconsider the order granting the motion to compel arbitration or show cause why a peremptory writ should not issue. After a hearing on February 10, 2023, the trial court vacated its prior order and denied the motion to compel arbitration. The Center defendants filed a timely notice of appeal from the February 2023 order.

## DISCUSSION

The Center defendants contend that the Act does not invalidate the arbitration agreement in this case for two reasons. First, it is not a "predispute" arbitration agreement because the conduct began before the agreement was signed. Second, the Act

does not apply because Kader's claims accrued before the effective date of the Act.  We disagree with these contentions.

## Standard of Review

"California statutes create a 'summary proceeding' for resolving petitions or motions to compel arbitration.  [Citation.]  'The petitioner bears the burden of proving the existence of a valid arbitration agreement by the preponderance of the evidence, and a party opposing the petition bears the burden of proving by a preponderance of the evidence any fact necessary to its defense.  [Citation.]  In these summary proceedings, the trial court sits as a trier of fact, weighing all the affidavits, declarations, and other documentary evidence, as well as oral testimony received at the court's discretion, to reach a final determination.'  [Citation.]"  (*Chambers v. Crown Asset Management, LLC* (2021) 71 Cal.App.5th 583, 590, fn. omitted.)

" 'There is no uniform standard of review for evaluating an order denying a motion to compel arbitration.  [Citation.]  If the court's order is based on a decision of fact, then we adopt a substantial evidence standard.  [Citations.]  Alternatively, if the court's denial rests solely on a decision of law, then a de novo standard of review is employed.  [Citations.]'  [Citation.] " (*Carlson v. Home Team Pest Defense, Inc.* (2015) 239 Cal.App.4th 619, 630.)

We review statutory interpretation issues de novo.  (*State Farm Mut. Auto. Ins. Co. v. Department of Motor Vehicles* (1997) 53 Cal.App.4th 1076, 1081.)  "The objective of statutory interpretation is to ascertain and effectuate legislative intent.  To accomplish that objective, courts must look first to the words of

the statute, giving effect to their plain meaning.  If those words are clear, we may not alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history.  [Citation.]  Whenever possible, we must give effect to every word in a statute and avoid a construction making a statutory term surplusage or meaningless.  [Citations.]" (*In re Jerry R.* (1994) 29 Cal.App.4th 1432, 1437.)

## Statutory Scheme

The Act consists of two sections.  Section 402, subdivision (a), provides that at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, "no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute."  Any issue as to whether the Act applies to a dispute is to be determined under federal law.  (9 U.S.C. § 402, subd. (b).)

Section 401 of the Act defines several relevant terms:  (1) a predispute arbitration agreement is "any agreement to arbitrate a dispute that had not yet arisen at the time of the making of the agreement;" (2) a sexual assault dispute is "a dispute involving a nonconsensual sexual act or sexual contact;" and (3) a sexual harassment dispute is "a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law."  (9 U.S.C. § 401, subds. (1), (3), & (4).)

A statutory note to the Act adds:  "This Act, and the amendments made by this Act, shall apply with respect to any

8

dispute or claim that arises or accrues on or after the date of enactment of this Act." (Pub.L. No. 117-90, § 3, reprinted in notes foll. 9 U.S.C. § 401.) All provisions enacted by Congress, including a provision codified as a statutory note, must be given equal weight regardless of their placement by the codifier. (*Famuyide v. Chipotle Mexican Grill, Inc.* (D. Minn., Aug. 31, 2023, No. CV 23-1127 (DWF/ECW)) 2023 WL 5651915, at \*3 (*Famuyide*).) "The Court must read § 402(a) in conjunction with the statutory note, as both are binding law." (*Ibid*.)

**<u>Date of Dispute</u>**

The Center defendants contend the arbitration agreement in this case is not a "predispute" arbitration agreement because the conduct allegedly began before Kader signed the arbitration agreement. We disagree with the Center's interpretation of the term "dispute."

The Act does not define a "dispute" or state when a dispute has "arisen." We look to general and legal dictionaries for a term's ordinary meaning. (*Fair Education Santa Barbara v. Santa Barbara Unified School District* (2021) 72 Cal.App.5th 884, 898.) The Cambridge Dictionary defines a dispute as "an argument or disagreement, especially an official one." (Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/dispute (Jan. 22, 2024).) Black's Law Dictionary defines a dispute as a "conflict or controversy, esp. one that has given rise to a particular lawsuit." (Black's Law Dictionary (11th ed. 2019).) Merriam-Webster's Dictionary of Law states a dispute is "an assertion of opposing views or claims: a disagreement as to rights[,] *especially*: one that is the subject of proceedings for

9

resolution (as arbitration)." (Merriam-Webster's Dictionary of Law,
https://www.merriam- webster.com/dictionary/dispute#legalDictionary (Jan. 22, 2024).)

We conclude the date that a dispute has arisen for purposes of the Act is a fact-specific inquiry in each case, but a dispute does not arise solely from the alleged sexual conduct. A dispute arises when one party asserts a right, claim, or demand, and the other side expresses disagreement or takes an adversarial posture. (*Famuyide, supra*, at *3.) In other words, "[a] dispute cannot arise until both sides have expressed their disagreement, either through words or actions." (*Id*. at *8.) Until there is a conflict or disagreement, there is nothing to resolve in litigation. (*Ibid*.)

"Other courts have analyzed this language and similarly concluded that a dispute requires some sort of disagreement or 'adversarial posture.' [(*Hodgin v. Intensive Care Consortium, Inc.* (S.D. Fla., Mar. 31, 2023, No. 22-81733-CV) 2023 WL 2751443, at *2 (*Hodgin*); *Silverman v. DiscGenics, Inc.* (D. Utah, Mar. 13, 2023, No. 2:22CV00354-JNP-DAO) 2023 WL 2480054, at *2] (concluding dispute arose when plaintiffs filed discrimination charges with government agency).)]" (*Famuyide, supra*, at *3.) The term dispute is broader than simply filing an action in court and includes many forums. (*Ibid*.)

The Center defendants contend, however, that a dispute arises when the alleged conduct occurs that constitutes sexual assault or sexual harassment, citing *Barnes v. Festival Fun Parks, LLC* (W.D. Pa., June 27, 2023, No. 3:22-CV-165) 2023 WL 4209745 at *1 (*Barnes*). We disagree. The *Barnes* court acknowledged that the terms "dispute" and "claim" have distinct

10

meanings as used by Congress, but then conflated the terms in that court's analysis. (*Barnes*, *supra*, at \*26–27.)

In general, a claim arises for the first time when the plaintiff suffers an injury. (*In re Marriage of Klug* (2005) 130 Cal.App.4th 1389, 1398 (*Klug*).) A cause of action accrues, and the statute of limitations begins to run, when the last element essential to the cause of action occurs and the plaintiff is entitled to maintain an action. (*Id.* at pp. 1399–1400.) A cause of action often arises and accrues at the same time, but the dates can be different under some circumstances, such as when a cause of action arises at the time of injury but does not accrue until discovery. (*Ibid.*) Unlike a claim, however, a dispute does not arise simply because the plaintiff suffers an injury; it additionally requires a disagreement or controversy. (*Hodgin*, *supra*, at \*2, *Famuyide*, *supra*, at \*3.)

"The definitions within the [Act] also make clear that a dispute requires more than an injury. The [Act] defines a 'sexual assault dispute' as 'a *dispute* involving a nonconsensual act or sexual conduct,' and it defines 'sexual harassment dispute' as '*a dispute* relating to conduct that is alleged to constitute sexual harassment.' [(9 U.S.C. § 401 (emphasis added).)] If the underlying conduct alone—the sexual assault or harassment— automatically gave rise to a dispute, then the legislature's use of the word 'dispute' within these two definitions would be superfluous. A 'sexual assault dispute' would merely mean 'a nonconsensual act or sexual conduct.' And a 'sexual harassment dispute' would mean 'conduct that is alleged to constitute sexual harassment.' This cannot be so. '[A] statute should be construed so that effect is given to all its provisions, so that no part will be

11

inoperative or superfluous, void or insignificant.' [Citation.]" (*Famuyide*, *supra*, at \*11.)

The Center defendants additionally rely on an unpublished federal district court order, *Zinsky v. Russin* (W.D. Pa., July 22, 2022, No. 2:22-CV-547) 2022 WL 2906371, at \*4 (*Zinsky*). The *Zinsky* court found the Act did not apply in that case based on the date that a claim accrues under state law, but failed entirely to consider or analyze the date that a dispute arises. We do not find the *Zinsky* opinion persuasive.

In the present case, there is no evidence that a dispute existed between the parties prior to or at the time of signing the new arbitration agreement on June 25, 2019. Kader alleged three incidents of sexually harassing or assaultive conduct took place before the agreement was signed, but there is no evidence that any dispute yet existed. In fact, Kader alleged Rasekhi threatened to fire him if he told anyone, implying that Rasekhi did not dispute the conduct. There was no evidence that Kader asserted any right, claim, or demand prior to filing charges with the DFEH in May 2022, and at oral argument, Kader's attorney conceded that Kader never complained to anyone at the Center about Rasekhi's conduct. There is also no evidence that the Center defendants disagreed with any claim asserted by Kader until after he filed charges with DFEH. The trial court properly concluded that the Act applies, because the arbitration agreement was executed before the dispute arose between the parties in May 2022.

## Case Filed After Effective Date

The Center defendants also contend the Act does not apply because Kader's claims accrued before the effective date of the Act. We disagree with this analysis.

Section 402, subdivision (a), unambiguously states that it applies in any case that relates to the sexual assault dispute or sexual harassment dispute. (*Murrey v. Superior Court* (2023) 87 Cal.App.5th 1223, 1235.) Under the plain meaning of section 402, subdivision (a), the Act applies to the instant case, which was filed after the effective date of the Act.

The statutory note states that the Act applies to "any dispute or claim that arises or accrues on or after the date of enactment of this Act." (Pub.L. No. 117-90, § 3, reprinted in notes foll. 9 U.S.C. § 401.) As discussed above, a claim may arise or accrue before a dispute arises, and additional claims may arise after a dispute arises. The dispute in this case arose in May 2022, after the effective date of the Act. The trial court properly concluded that the Act applied to invalidate the predispute arbitration agreement in this case.

13

## DISPOSITION

The order denying the motion to compel arbitration is affirmed.  Plaintiff and respondent Omar Kader is awarded his costs on appeal.

MOOR, J.

We concur:


RUBIN, P. J.


KIM, J.