Filed 2/16/16  Marriage of Childs CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re the Marriage of MANDY and MATTHEW CHILDS. | D066960 |
| MANDY CHILDS, | |
| Respondent, | (Super. Ct. No. D534396) |
| v. | |
| MATTHEW J. CHILDS, | |
| Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Christine K. Goldsmith, Judge.  Affirmed.

Mazur & Mazur and Janice R. Mazur; The LaCroix Law Group and Robert E. LaCroix, for Appellant.

Stephen Temko and Dennis Temko for Respondent.

Matthew J. Childs appeals from an amended judgment entered after the family court denied his request to enforce a marital settlement agreement (MSA) under Code of Civil Procedure section 664.6.  (Undesignated statutory references are to the Code of

Civil Procedure.) He asserts the family court erred in: (1) finding bonuses from his employer were not community property debts or obligations; (2) failing to reimburse him for excess spousal support paid to ex-wife, Mandy; and (3) ordering him to pay Mandy's attorney's fees. We reject Matthew's arguments.

FACTUAL AND PROCEDURAL BACKGROUND

Matthew and Mandy married in 2003 and had a son about a year later. Mandy also had a two-year-old daughter from a prior marriage. The parties separated in 2012. The family court entered custody and visitation orders in February 2014.

Matthew worked as a financial advisor. In 2010, Matthew changed employers and moved his book of business to a different financial institution. As part of this transition, Matthew's new employer agreed to pay him two lump sum bonuses totaling about $1 million. Matthew's employer referred to the bonuses as "bonus loans" and had Matthew execute promissory notes to evidence the transaction. The community received the money from the two bonuses to purchase real property, pay other living expenses and make purchases.

Under the bonus agreement with his employer, Matthew was entitled to annual bonuses (subject to conditions), which were equal to the amount of the required loan installment payment plus interest. The annual bonuses were guaranteed subject to, among other things, being employed and in good standing with his employer. The annual bonuses were subject to state and federal tax withholding and the net bonus was to be applied to the installment payments due on the "loan." Matthew was required to

2

supplement his annual bonus to pay the installment in full. His incentive compensation checks were subject to mandatory attachment until he paid the full installment.

In January 2014, the parties appeared in court and Mandy's counsel announced that the parties had reached a "complete settlement" and read the settlement into the record. The oral settlement agreement did not reference the two bonuses received by the community during the marriage and subject to repayment over the next several years. Both parties agreed on the record with the stated terms. Mandy's counsel prepared and submitted to Matthew's counsel a proposed written MSA. In a paragraph entitled "Obligations," the parties were to list on an exhibit all separate, community or joint liabilities. Mandy's counsel did not list the bonuses on the exhibit.

Matthew's counsel requested several modifications to the proposed MSA, including that the two bonuses acquired during the marriage be listed on the exhibit as a community obligation being assumed by Matthew. Mandy refused to include this obligation on the exhibit asserting Matthew and his counsel never mentioned the bonuses when her counsel read the settlement into the record. Mandy claimed Matthew could not assert the bonuses were forgotten as the parties spent three hours negotiating the oral settlement based on the fact that the bonuses were not a community obligation or debt under *In re Marriage of Finby* (2013) 222 Cal.App.4th 977 (*Finby*).

After the parties unsuccessfully tried to resolve the issue, Matthew filed an ex parte application to clarify and enforce the settlement agreement under section 664.6, specifically seeking an order requiring the two bonuses acquired by the community during the marriage be listed as a community obligation in the MSA. Matthew also

3

requested an order requiring Mandy to reimburse excess spousal support she had received under a prior wage garnishment order after she had been paid $90,000 in exchange for her express waiver of all future spousal support. Mandy opposed Matthew's request, incorporated her own motion under section 664.6, requested sanctions and an award of attorney's fees.

In a document titled a statement of decision, the family court denied Matthew's application, finding that under *Finby*, the loan bonuses were "community assets subject to division, not debt" and that the parties did not agree to treat the bonuses in this manner in their settlement agreement. The court did not address Matthew's request for reimbursement of the overpayment of spousal support. The court granted Mandy's request for $7,000 in attorney's fees she incurred for having to respond to the motion, finding the motion to be "spurious." The family court then entered an amended judgment incorporating the terms of the settlement as described on the record and the court's finding that repayment of the bonuses were not a community debt. Matthew timely appealed from the amended judgment.

## DISCUSSION

### I. *Bonuses*

#### A. General Legal Principles

Section 664.6 provides a summary procedure allowing a court to specifically enforce an agreement settling pending litigation without requiring the filing of a second lawsuit. (*Kirby v. Southern Cal. Edison Co.* (2000) 78 Cal.App.4th 840, 843.) The statute expressly authorizes trial courts to determine whether a settlement has occurred

4

and implicitly authorizes the trial court to interpret the terms and conditions of the settlement.  (*Skulnick v. Roberts Express, Inc.* (1992) 2 Cal.App.4th 884, 889.)  When ruling on a section 664.6 motion, the trial court acts as a trier of fact (*Fiore v. Alvord* (1985) 182 Cal.App.3d 561, 565), and may determine the motion upon declarations alone (*Corkland v. Boscoe* (1984) 156 Cal.App.3d 989, 994).  Accordingly, the trial court's factual findings are subject to limited appellate review and will not be disturbed if supported by substantial evidence.  (*Osumi v. Sutton* (2007) 151 Cal.App.4th 1355, 1360.)

"A settlement agreement is a contract, and the legal principles which apply to contracts generally apply to settlement contracts."  (*Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 810.)  "[T]he trial court is under a duty to render a judgment that is in exact conformity with an agreement or stipulation of the parties.  'If interpretation of a stipulation is in order the rules applied are those applied to the interpretation of contracts.  [Citations.]  It is not the province of the court to add to the provisions thereof [citations]; to insert a term not found therein [citations]; or to make a new stipulation for the parties.' "  (*Jones v. World Life Research Institute* (1976) 60 Cal.App.3d 836, 840.)

B.  Analysis

Matthew does not dispute that the parties settled their litigation; rather, he contends the parties did not intend the oral settlement agreement to be "a full and complete recitation of every aspect of the parties' agreement" as the parties contemplated executing a written MSA and that the oral settlement "omitted" reference to how the

5

bonuses would be characterized. He contends the obligation to repay the bonuses is a community debt which must be allocated and that the family court erred as a matter of law when it denied his motion. Our review of the record convinces us that the family court did not err.

Before reading the parties' settlement into the record, Mandy's trial counsel represented that the parties intended the oral settlement to completely resolve all reserved issues and that a written settlement agreement would be prepared to reflect the terms recited on the record. As relevant here, the parties agreed Mandy would "be waiving her *Smith-Osler* percentage with respect to [Matthew's] bonus income. We had a reservation of jurisdiction over that issue. She is waiving as to the spousal support component." Additionally, starting in 2015, the parties would be recalculating child support annually based on the W-2 income of each party.

After Mandy's counsel read the settlement terms into the record, Matthew's counsel represented that he had "[n]o corrections or modifications." Counsel then inquired of their respective clients whether they understood the settlement and agreed to be bound by it. Both parties responded affirmatively. In their sworn declarations, Mandy and her trial counsel provided additional insight into the events that transpired before the settlement terms were read into the record.

Mandy stated that the parties started negotiating their settlement the day before her counsel read the settlement into the record and that the parties resolved all issues before her counsel placed the settlement on the record. She represented that Matthew and his counsel were "well aware of the 'bonus/loan' argument" presented in Matthew's section

6

664.6 request and they negotiated the settlement based on the fact that, under *Finby*, Matthew's bonuses were not loans, but tax deferred bonuses, and the *Finby* case "formed the basis of the settlement." Mandy's trial counsel stated that she presented Matthew's counsel with a copy of *Finby* upon its publication in December 2013 and provided her analysis of the case and how it applied to the parties' dispute. Thus, "[t]o the extent [Matthew's counsel] had any concerns or questions regarding how future bonuses/forgivable loans would be treated for purposes of child support, he was well aware of such issues prior to the settlement being read into the record."

Matthew and his counsel provided sworn declarations to the family court with their original filing and in response to Mandy's filing. In his original declaration, Matthew's counsel stated that he proposed "several modifications" to the proposed written MSA, including that the bonus loan debt be listed as a community obligation, that Mandy's counsel had refused and the parties were at an impasse. Matthew's original declaration stated that he wanted to adhere to the settlement and explained why his bonuses should be listed as a community debt. In his reply declaration, Matthew's counsel again explained why the bonuses should be listed as a community debt, stating nothing in *Finby* dictated the opposite. The sur-reply of Matthew and his counsel provided evidentiary support for Matthew's position. Absent from these declarations, however, is any rebuttal to the declarations of Mandy and her counsel that Matthew and his counsel were aware of *Finby*, that Mandy's counsel provided an analysis of *Finby* and that the parties negotiated the settlement based on *Finby*.

7

Based on this evidence, the family court made two findings. It concluded that counsel and the litigants were aware of *Finby* and its importance to their case and that they settled the matter based on *Finby*. This finding is amply supported by the record. The family court also found that the parties' settlement constituted a "bargained-for-exchange of rights and obligations" and did not contemplate treating the bonuses as a community debt, noting that Mandy waived future spousal support, Matthew received particular stock and investment accounts and the parties divided their real property. This finding is similarly supported by the record.

Matthew takes issue with the family court's statement that under *Finby* the bonuses were community assets, not debts, and that ongoing bonus payments could be used to compute child support. We need not opine on the family court's interpretation of *Finby* or the parties' differing interpretations to resolve this appeal. The record shows all counsel and the litigants knew of the *Finby* case and had sufficient time to analyze how the case potentially impacted the issues in dispute. With this knowledge, the parties negotiated a "complete" settlement. In other words, each side compromised to buy their peace. Given that the bonuses totaled over $1 million, it is inconceivable that counsel and the litigants, one of whom was a financial advisor, simply forgot about them when negotiating the settlement. It was not for the family court to change the parties' bargain.

8

## II. *Overpayment of Spousal Support*

### A. Background

The parties agreed that Mandy waived all future spousal support after January 1, 2014. In his application to the court, Matthew requested that Mandy reimburse him over $6,000 in spousal support that he paid after that date. In a supplemental declaration, Mandy stated that $6,140.31 in spousal support paid in February and March 2014 needed to be returned to Matthew. She also stated that she incurred $6,654.98 in expenses for their son and requested an offset in this amount against the spousal support that she needed to repay. At the hearing, Mandy's counsel conceded to the family court that "there was an overpayment" of spousal support, but claimed an offset for purported unexpected expenses. In its statement of decision, the family court did not specifically address Matthew's reimbursement request; rather, the family court stated "[Matthew's] motion is denied."

### B. Analysis

Matthew asserts the family court abused its discretion in refusing to direct Mandy to reimburse these funds. Mandy contends Matthew forfeited this argument by failing to obtain a ruling on the matter from the family court. Should we conclude the family court implicitly ruled on the matter, Mandy asserts the family court impliedly agreed she was entitled to an offset and simply denied Matthew's reimbursement request. We reject Mandy's forfeiture argument, but agree the family court impliedly found the amount she owed and the amount she requested offset each other.

9

A trial court is required to issue a statement of decision explaining the factual and legal basis for its decision "upon the request of any party appearing at the trial." (Code Civ. Proc., § 632.) Generally, a trial court has no obligation to issue a statement of decision in connection with consideration of a motion, even where resolution of the motion involves an extensive evidentiary hearing. (*In re Marriage of Fong* (2011) 193 Cal.App.4th 278, 294.) Any exceptions to this general rule do not apply. (*Id.* at pp. 295-297.) Accordingly, the parties could not request a statement of decision and the court had no obligation to provide one. The family court's description of the minute order as a "statement of decision" was erroneous.

Matthew's motion included a request that Mandy reimburse him over $6,000 in spousal support that he overpaid. In its ruling, the family court denied the motion without specifically addressing Matthew's reimbursement request. We review denial of Matthew's reimbursement request for substantial evidence.

We resolve all conflicts in the evidence in favor of the prevailing party (*In re Marriage of Klug* (2005) 130 Cal.App.4th 1389, 1398), and the trial court's factual determinations are binding if supported by substantial evidence (*In re Marriage of Grinius* (1985) 166 Cal.App.3d 1179, 1185). "As long as the court exercised its discretion along legal lines, its decision will be affirmed on appeal if there is substantial evidence to support it." (*In re Marriage of Duncan* (2001) 90 Cal.App.4th 617, 625.) Credibility is an issue of fact for the trial court to resolve (*Johnson v. Pratt & Whitney Canada, Inc.* (1994) 28 Cal.App.4th 613, 622), and the testimony of a single witness,

even that of a party, is sufficient to provide substantial evidence to support a trial court's finding of fact. (*In re Marriage of Mix* (1975) 14 Cal.3d 604, 614.)

Our review of the record shows substantial evidence supported the family court's implied denial of Matthew's request. In a sworn declaration, Mandy conceded that spousal support of about $6,140 needed to be returned to Matthew, but she requested an offset for about $6,654 in expenses for their son, which she itemized. Mandy's trial counsel, similarly informed the court during oral argument that Matthew had overpaid spousal support, but claimed an offset for unexpected expenses. Matthew did not dispute the authenticity of Mandy's expenses or request that she present additional evidence to support them. Because the amount Matthew requested was less than the amount of Mandy's expenses the family court reasonably denied Matthew's reimbursement request.

### III. *Attorney's Fee Award*

A. Background

Mandy declared that she incurred $7,000 in attorney's fees and costs in responding to Matthew's motion. In a supplemental declaration she requested sanctions in addition to a fee award. After considering the respective financial condition of the parties and the nature of the motion, which it "deem[ed] spurious," the family court awarded Mandy $7,000 for attorney's fees.

B. Analysis

A family court may base an attorney's fees and costs award "on the extent to which the conduct of each party or attorney furthers or frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by

11

encouraging cooperation between the parties and attorneys." (Fam. Code, § 271, subd. (a).) Thus, this statute "advances the policy of the law 'to promote settlement and to encourage cooperation which will reduce the cost of litigation.' " (*In re Marriage of Petropoulos* (2001) 91 Cal.App.4th 161, 177.) "Family law litigants who flout that policy by engaging in conduct that increases litigation costs are subject to the imposition of attorneys' fees and costs as a sanction." (*Ibid.*) Whether to impose sanctions and the amount thereof is addressed to the family court's sound discretion. (*In re Marriage of King* (2000) 80 Cal.App.4th 92, 122.)

Where there is no indication that an attorney's fee award was ordered as a sanction under Family Code section 271, it is presumed to be a "need-based" award. (*In re Marriage of Braud* (1996) 45 Cal.App.4th 797, 827.) Family Code section 2030 provides for need-based awards in marriage dissolution proceedings. An award under this statute requires findings on the propriety of such an award, whether there is a disparity in access to funds to retain counsel and whether one party is able to pay for legal representation of both parties. (Fam. Code, § 2030, subd. (a)(2).) A party seeking a need-based award also must serve and file either a Judicial Council form or a comparable declaration addressing the reason for the request, the specific amount sought, whether fees or costs have been previously ordered, financial need, the attorney's billing rates and experience, the nature of litigation and notice to the responding party. (See *In re Marriage of Sharples* (2014) 223 Cal.App.4th 160, 165-168.) "[A]lthough the trial court has considerable discretion in fashioning a need-based fee award [citation], the record must reflect that the trial court

12

actually exercised that discretion, and considered the statutory factors in exercising that discretion."  (*In re Marriage of Braud*, at p. 827, fn. omitted.)

Matthew contends the family court abused its discretion in finding his motion was "spurious" and awarding fees without specifying a statutory basis for the award.  To the extent the award could be deemed to be a sanction under Family Code section 271, he asserts that even if we affirm the court's order, its finding that the motion was spurious was unwarranted based on his good faith interpretation of *Finby*.  Mandy contends the family court made the award under Family Code section 2030 because it considered her financial circumstances.  In any event, she asserts the family court did not abuse its discretion as substantial evidence supported the award under either theory.

Mandy did not file the required declarations and the family court did not make the required findings for a need-based award.  Accordingly, we determine whether the family court abused its discretion in awarding Mandy $7,000 as a sanction under Family Code section 271.  The record supports the family court's finding that Matthew's motion was spurious.  While it is abundantly clear the parties' interpretation of *Finby* differed, it is similarly clear they negotiated a complete settlement knowing of these differences.  A section 664.6 motion under these circumstances was not appropriate and we cannot conclude that the family court abused its discretion in awarding Mandy $7,000 as a sanction under Family Code section 271.

DISPOSITION

The judgment is affirmed.  Respondent is entitled to her costs on appeal.


McINTYRE, J.

WE CONCUR:


McCONNELL, P. J.


IRION, J.