In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-1753

STROITELSTVO BULGARIA LIMITED,

*Plaintiff-Appellant*,

*v.*

BULGARIAN-AMERICAN ENTERPRISE FUND, ET AL.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 08 C 3056—**Ruben Castillo**, *Judge.*

ARGUED SEPTEMBER 10, 2009—DECIDED DECEMBER 14, 2009

Before MANION, SYKES, and TINDER, *Circuit Judges.*

TINDER, *Circuit Judge.* Stroitelstvo Bulgaria Ltd. ("Stroitelstvo"), a Bulgarian construction company, entered into a loan contract with the Bulgarian-American Credit Bank ("Bank"). The Bank later claimed that Stroitelstvo breached the contract and demanded the full amount due on the loan. Stroitelstvo denied any breach but eventually settled by paying a large chunk of the Bank's claim. The execution of the contract,

alleged breach, and settlement payment all took place in Bulgaria.

Then, Stroitelstvo came to U.S. federal court and sued the Bank and its Chicago-based parent, the Bulgarian-American Enterprise Fund ("BAEF"), for the Bank's alleged predatory lending practices. Now the question arises, why should a U.S. district court decide this dispute over a Bulgarian loan contract? The district court couldn't find a good answer and so dismissed Stroitelstvo's case on the ground of *forum non conveniens*. Because we agree with the district court that Bulgaria is a better forum than the United States to resolve this dispute, we affirm.

## I.  Background

The facts, as alleged in Stroitelstvo's complaint, describe a classic predatory lending scheme. In March, 2005, Stroitelstvo entered into a loan contract with the Bank to finance a residential construction project in Sofia, Bulgaria. The contract required the Bank to disburse a total of about 1.9 million euros to Stroitelstvo through various stages of the project. Several months into the loan, when the Bank had disbursed only 361,000 of the total 1.9 million euros, the Bank asserted that Stroitelstvo breached the loan contract by, among other things, failing to turn over certain advance payments on residential units. The Bank suspended Stroitelstvo's credit and claimed a right to recover 970,438 euros, equal to the 361,000 euros already disbursed plus the total interest and fees due under the loan.

According to Stroitelstvo, the Bank's claimed breach was pretextual and designed to pressure Stroitelstvo into paying the Bank more than it deserved under the loan contract. The Bank went to the Sofia City Court *ex parte* and obtained a judgment in the amount of the 970,438 euros purportedly owed, a judgment that the Bank used to freeze Stroitelstvo's assets. With its assets frozen, Stroitelstvo couldn't afford to wait two or three years while it pursued a separate action in Bulgarian court to overturn the Bank's judgment. So instead, Stroitelstvo agreed to pay the Bank 563,000 euros, less than the 970,438 euros claimed by the Bank but more than what Stroitelstvo thought that it owed under the contract.

In April, 2007, Stroitelstvo sued the Bank and BAEF, the Bank's Chicago-based parent, in the U.S. District Court for the District of Columbia. Stroitelstvo claimed that BAEF and the Bank had conducted a scheme to extort and blackmail several Bulgarian businesses, including Stroitelstvo, and that this scheme was a "racketeering activity" giving rise to a civil remedy under the Racketeer Influenced and Corrupt Organizations ("RICO") Act. 18 U.S.C. §§ 1962, 1964. Stroitelstvo's complaint also contained several contract and tort claims, most based in American law, but one alleging a violation of the Bulgarian Obligations and Contracts Act.

The defendants successfully moved the D.C. District Court to transfer the case to the Northern District of Illinois, as BAEF is headquartered in Chicago. The N.D. Ill. district court then took up the defendants' motion to

dismiss based on, among other things, the doctrine of *forum non conveniens*, in which the defendants argued that Bulgaria was a more convenient forum than the United States to resolve the parties' dispute. The parties offered the testimony of experts in Bulgarian law, who addressed the adequacy of the Bulgarian courts to adjudicate Stroitelstvo's claims. Stroitelstvo's experts, Maria Slavova and Vladimir Skochev, generally doubted that Bulgarian law would provide adequate substitutes for all of the American-law claims raised in Stroitelstvo's complaint. They also described a public perception of corruption in the Bulgarian legal system. The defendants' expert, Silvy Chernev, thought that Bulgarian law would provide a remedy for all of the conduct alleged in Stroitelstvo's complaint, even though not all of Stroitelstvo's American-law claims had exact Bulgarian equivalents. Chernev also acknowledged problems of judicial corruption but nonetheless insisted that the Bulgarian courts were generally adequate.

After carefully considering the expert testimony and Stroitelstvo's arguments against dismissal, the district court granted the defendants' motion to dismiss on *forum non conveniens* grounds. The court thought that resolving Stroitelstvo's case in Bulgaria, rather than in the United States, would better serve the convenience of the parties and the ends of justice. Stroitelstvo appeals, which it may, since a *forum non conveniens* dismissal is a final, appealable judgment even though it does not end the litigation. *Abad v. Bayer Corp.*, 563 F.3d 663, 665 (7th Cir. 2009).

## II. Analysis

The common law doctrine of *forum non conveniens* allows a federal district court to dismiss a suit over which it would normally have jurisdiction in order to best serve the convenience of the parties and the ends of justice. *Clerides v. Boeing Co.*, 534 F.3d 623, 627-28 (7th Cir. 2008) (citing *In re Bridgestone/Firestone, Inc.*, 420 F.3d 702, 703 (7th Cir. 2005)). We review the district court's dismissal of a case on *forum non conveniens* grounds for an abuse of discretion. *Abad*, 563 F.3d at 665.

### A. The Adequacy of Bulgaria as an Alternative Forum

A threshold requirement for any *forum non conveniens* dismissal is the existence of an alternative forum that is both "available" and "adequate." *Kamel v. Hill-Rom Co., Inc.*, 108 F.3d 799, 802 (7th Cir. 1997). An alternative forum is "available" if all of the parties are amenable to process and within the forum's jurisdiction. *Id.* at 803. Stroitelstvo does not dispute that Bulgaria is an available forum. The Bank, which operates in Bulgaria, and BAEF, which maintains an office in Sofia, are both amenable to process and within the Bulgarian courts' jurisdiction. Moreover, BAEF has consented to the Bulgarian courts' jurisdiction as a condition of *forum non conveniens* dismissal.

The adequacy of a Bulgarian forum, on the other hand, is the central dispute in this appeal. An alternative forum is adequate if it provides the plaintiff with a fair hearing to obtain some remedy for the alleged wrong. *Id.*

It is not necessary that the forum's legal remedies be as comprehensive or as favorable as the claims a plaintiff might bring in an American court. *See id*. Instead, the test is whether the forum provides some potential avenue for redress for the subject matter of the dispute. *See id.*

At least some substantial expert testimony in this case indicated that Stroitelstvo could expect a fair hearing in the Bulgarian courts. As the experts recognized, Bulgaria gained admission to the European Union in 2007, and one requirement for EU membership is that the nation have a stable legal system that guarantees the rule of law. The defendants' expert, Chernev, also stated that Bulgaria has an independent judiciary that provides full and fair consideration of commercial disputes.

It is true that all of the experts lamented a public perception of corruption in the Bulgarian courts, and Skochev, Stroitelstvo's expert, even claimed that the Bulgarian legal system was incapable of providing a fair hearing. Still, the experts made no attempt to quantify this purported corruption or document particular plaintiffs or claims that were treated unfairly. Their generalized, anecdotal complaints of corruption are not enough for a federal court to declare that an EU nation's legal system is so corrupt that it can't serve as an adequate forum. *See Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1179 (9th Cir. 2006) (finding the plaintiff's "anecdotal evidence of corruption and delay" in the Philippine courts insufficient to show inadequacy); *In re Arbitration between Monegasque de Reassurances S.A.M. v. Nak Naftogaz of Ukr.*,

311 F.3d 488, 499 (2d Cir. 2002) (refusing "to pass value judgments on the adequacy of justice and the integrity of Ukraine's judicial system on the basis of no more than . . . bare denunciations and sweeping generalizations"); *Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1312 (11th Cir. 2001) (requiring the plaintiff to substantiate allegations of serious corruption or delay with "significant evidence documenting the partiality or delay . . . typically associated with the adjudication of similar claims").

The expert testimony also showed that Bulgarian law provides some remedy for the subject matter of this dispute, the Bank's alleged breach of the loan contract and predatory lending practices. Chernev cited several provisions of the Bulgarian Obligations and Contracts Act that enforce contractual obligations and provide for damages against a commercial party who fails to act in good faith. Although Stroitelstvo's experts disagreed with Chernev on the full scope of remedies available under Bulgarian law, it was undisputed that the Act would support a breach of contract action and damages remedy against the Bank for the conduct alleged in Stroitelstvo's complaint.

To be sure, Bulgarian law might not support the full array of legal claims spelled out in Stroitelstvo's federal-court complaint. In particular, the experts agreed that Bulgaria has no equivalent to Stroitelstvo's RICO claim. That is neither surprising, since RICO is a uniquely American effort to target organized crime, *see Kempe v. Ocean Drilling & Exploration Co.*, 876 F.2d 1138, 1143-44 (5th Cir. 1989), nor problematic, since federal courts have

routinely held that the loss of a RICO claim does not by itself preclude a *forum non conveniens* dismissal, *Yavuz v. 61 MM, Ltd.*, 576 F.3d 1166, 1177 n.6 (10th Cir. 2009) (citing cases).

The experts battled over whether Bulgarian law would recognize Stroitelstvo's other tort claims, or otherwise provide adequate substitutes for those claims and the RICO claim. Chernev, the defendants' expert, was confident that Bulgarian law could address in some form all of the legal issues raised by Stroitelstvo's complaint. He also thought that the general tort provision of the Obligations and Contracts Act would allow Stroitelstvo to seek tort damages from the defendants. Stroitelstvo's experts were, predictably, less optimistic. Slavova disagreed with Chernev's prediction that the Obligations and Contracts Act would support Stroitelstvo's tort claims, since the Act permits tort liability against only natural persons, not "legal entities" like the Bank and BAEF. Skochev essentially agreed with Slavova, testifying that a Bulgarian company may be liable in tort under the Act only if the plaintiff identifies a specific, natural person who committed the tort while working for the company. Skochev further testified that Bulgarian law could provide only partial remedies for the complex commercial issues raised by Stroitelstvo's complaint.

We think that this dispute over the range of legal claims that Stroitelstvo can pursue in a Bulgarian court merely demonstrates "the possibility of an unfavorable change in the law," which ordinarily does not carry substantial weight in the *forum non conveniens* analysis. *Piper Aircraft v.*

*Reyno*, 454 U.S. 235, 249 (1981). Although Stroitelstvo's experts characterized the relief available under Bulgarian law as partial and incomplete, their testimony does not show that this relief is "so clearly inadequate or unsatisfactory that it is no remedy at all." *Id.* at 254. As for the possible loss of Stroitelstvo's tort claims against these corporate defendants, it is undisputed that Stroitelstvo would retain a claim for contract damages under the Obligations and Contracts Act. In that sense, this case is like *Kamel*, in which we concluded that the availability of a breach of contract action made the forum adequate, despite the plaintiff's argument that the forum would not recognize his tort claims. 108 F.3d at 803. Of course, each *forum non conveniens* case is fact-specific, and we do not say that an alternative forum is necessarily adequate to resolve a tort plaintiff's claims simply because the defendant can point to some conceivable contract remedy. Here, though, the contractual remedies available under Bulgarian law go to the heart of this dispute, a loan contract between Stroitelstvo and the Bank.

In an attempt to prove that its experts are correct that the Bulgarian courts cannot adjudicate its claims, Stroitelstvo has already filed a complaint identical to the one that it filed in federal court in a Bulgarian district court. Sure enough, the Bulgarian court dismissed Stroitelstvo's complaint for presenting a combination of contractual and tort claims in a manner inconsistent with Bulgarian law. Still, this dismissal hardly demonstrates that the Bulgarian court is inadequate to resolve Stroitelstvo's dispute, for the court simply ordered Stroitelstvo to re-prepare its complaint in accordance

with Bulgarian, not American, law. It would be re-
markable if any foreign court were to accept Stroitelstvo's
American-law complaint without change, and
Stroitelstvo's argument that the Bulgarian court's refusal
to do so makes it inadequate is unpersuasive.

Slightly more persuasive is Stroitelstvo's argument that
Bulgarian law is incapable of providing relief against
one of two parties in this case, BAEF. With respect to this
defendant, Stroitelstvo raises only tort claims, not
contract claims. So if Stroitelstvo's experts are correct that
Bulgarian law will not support tort claims against corpo-
rate defendants like BAEF, dismissing this case to
Bulgaria will cause Stroitelstvo to lose all of its claims
against BAEF. Stroitelstvo submits that this loss of a
defendant from its case, as opposed to the mere loss of
particular legal claims, is so significant as to leave
Stroitelstvo with no remedy at all.

Initially, we reiterate that it is not beyond dispute that
Stroitelstvo would be unable to sue BAEF in tort under
Bulgarian law. Chernev thought that provisions of the
Obligations and Contracts Act would support tort claims
against a corporate defendant like BAEF, although
Slavova and Skochev disagreed. More importantly, we
think that Stroitelstvo's argument about losing a
defendant is more or less the same as its argument about
losing its preferred American-law tort claims. It is an
overstatement to say that a *forum non conveniens*
dismissal will cause Stroitelstvo to "lose" BAEF as a
defendant; BAEF *is* a defendant in this case that has
consented to the jurisdiction of the Bulgarian courts. In

our view, Stroitelstvo's real concern is that any Bulgarian-law substitutes that it might come up with for its complex American-law claims against BAEF will ultimately fail. It is possible that Stroitelstvo's prediction will prove true and BAEF will win a dismissal, causing Stroitelstvo to effectively "lose" BAEF from the case. It is also possible that the Bulgarian courts will interpret the Obligations and Contracts Act to extend tort liability to BAEF under these circumstances, or that Stroitelstvo will identify a natural person whose tortious acts may be imputed to BAEF, or that Stroitelstvo will assert a contractual claim cognizable against a corporate defendant like BAEF. We need not be certain that Stroitelstvo would succeed in its claims against BAEF in order to find Bulgaria an adequate forum. *See In re Factor VIII or IX Concentrate Blood Prods. Litig.*, 484 F.3d 951, 957-58 (7th Cir. 2007) (noting that the U.K. approach to the plaintiff's claim was uncertain but finding the forum adequate). It is enough to conclude that, whatever the chances of any particular claim against either defendant in this case, Bulgarian law gives Stroitelstvo some potential avenue for redress.

In addition to an arguably less favorable substantive law, the Bulgarian legal system has certain procedural requirements that Stroitelstvo would prefer to avoid. In order to file a lawsuit in Bulgaria, a plaintiff must pay a filing fee equal to 4% of the damages claimed, a fee that is recoverable if the plaintiff prevails. For the (strikingly large) $30 million damages demanded in Stroitelstvo's complaint, the fee would be $1.2 million, much more than what Stroitelstvo's director said the company could afford.

Although the financial hardship of requiring a plaintiff to sue outside of the chosen forum is relevant to the *forum non conveniens* analysis, *see Macedo v. Boeing Co.*, 693 F.2d 683, 690 (7th Cir. 1982), we conclude that Bulgaria's filing fee does not preclude dismissal. Federal courts have declined to find foreign forums inadequate based on filing fees similar to the 4% fee required here. *See Altmann v. Republic of Austria*, 317 F.3d 954, 972-73 (9th Cir. 2002) (concluding that Austria's 1.2% court fee was not oppressive in the context of the plaintiff's resources); *Satz v. McDonnell Douglas Corp.*, 244 F.3d 1279, 1283 (11th Cir. 2001) (per curiam) ("The plaintiffs' concerns about Argentine filing fees . . . do not render Argentina an inadequate forum."); *Mercier v. Sheraton Int'l, Inc.*, 981 F.2d 1345, 1353 & n.7 (1st Cir. 1992) (characterizing the Turkish courts' cost bond of up to 15% of the recovery sought as non-excessive under the circumstances). More importantly, the district court in this case did not simply ignore the impact of the filing fee on Stroitelstvo's ability to sue in Bulgaria. *Cf. Macedo*, 693 F.2d at 690 (reversing a *forum non conveniens* dismissal based in part on the district court's failure to consider the financial hardship to the plaintiffs of litigating in Portugal); *Lehman v. Humphrey Cayman, Ltd.*, 713 F.2d 339, 345-47 (8th Cir. 1983) (finding that the district court failed to consider the plaintiff's practical ability to litigate claims in the Cayman Islands, where lawyers did not take cases on a contingent-fee basis and foreign litigants had to pay a cost bond). The court noted that the large $1.2 million filing fee was driven by Stroitelstvo's $30 million damages claim, which in turn resulted from Stroitelstvo's

demand for treble damages under RICO. *See* 18 U.S.C. § 1964(c). Since Bulgaria has no equivalent to RICO, Stroitelstvo's damages claim, and hence the filing fee, would probably be lower upon converting Stroitelstvo's complaint to claims cognizable under Bulgarian law. The district court did not abuse its discretion in concluding that Bulgaria's filing fee, typical for a civil law country, *Altmann*, 317 F.3d at 972, and driven in size only by Stroitelstvo's complaint, did not make Bulgaria an inadequate forum.

### B. The Balance of Private and Public Interest Factors

If an adequate alternative forum exists, the district court should consider whether a *forum non conveniens* dismissal would serve the private interests of the parties and the public interests of the alternative forums. *Kamel*, 108 F.3d at 803. The Supreme Court has identified several private and public interest factors that guide this analysis:

> The private interest factors that a court may consider include "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." . . . The public interest factors include the administrative difficulties stemming from court congestion; the local interest in having localized disputes decided at home; the interest in having

the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflicts of laws or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

*Clerides*, 534 F.3d at 628 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947)).

The district court acted well within its discretion in concluding that the relevant private and public interest factors favored dismissal. As for the private interest factors, the court determined that the witnesses and documents pertaining to the loan contract are located in Bulgaria. It follows that most of the discovery in this case will take place in Bulgaria, and transporting all of the evidence and witnesses to Chicago would be unnecessarily expensive. *See U.S.O. Corp. v. Mizuho Holding Co.*, 547 F.3d 749, 751 (7th Cir. 2008) (describing the burden of dragging witnesses and documents from Japan to Chicago); *Clerides*, 534 F.3d at 629 (noting that most of the evidence and witnesses were located in the foreign forum). Translating all of the Bulgarian discovery documents into English for a U.S. court would also be costly. *See U.S.O. Corp.*, 547 F.3d at 751 (citing the unnecessary translation costs that would result from trying the case in Chicago rather than in Japan).

Regarding the public interest factors, the district court found that court congestion was essentially a wash; the 30-month average time to trial in the Northern District of Illinois is comparable to the two to three years

that Stroitelstvo's complaint alleged it would take to try a case against the Bank in Bulgarian court.

More strongly favoring dismissal is the local interest factor. The Northern District of Illinois has little interest in the Bulgarian loan contract at the heart of this dispute. The American defendant, BAEF, is a peripheral player who didn't even know about the underlying loan transaction prior to Stroitelstvo's lawsuit. Since this loan is so unrelated to the local forum, calling Chicago-area citizens for jury duty on this case would be asking a lot. *See id.* at 755 ("[T]o burden Americans with jury duty to resolve an intramural Japanese dispute would be gratuitous.").

Stroitelstvo points out that BAEF receives federal funds under the Support for East European Democracy ("SEED") Act, 22 U.S.C. §§ 5401-95, which it uses to support the Bank's activities. According to Stroitelstvo, U.S. taxpayers have an interest in ensuring that BAEF uses its SEED Act funding for the proper purpose of promoting entrepreneurship in Bulgaria, not for the improper purpose of extorting Bulgarian businesses. Perhaps, but we think that Bulgaria has an equal if not greater interest in guarding against the extortion of its own businesses. *See Abad*, 563 F.3d at 668 (observing no real "national interest" in either regulating American companies or resolving the tort claims of Argentine citizens); *Clerides*, 534 F.3d at 630 (finding that the U.S. interest in regulating a domestic airline company was matched by the interests of Greece and Cyprus in regulating the use of allegedly defective planes within their borders).

The application of foreign law also slightly favors dismissal to Bulgaria. The loan contract has a Bulgarian choice-of-law provision, and the Bulgarian Obligations and Contracts Act would govern at least one of Stroitelstvo's claims if the case were tried in the United States. *See Abad*, 563 F.3d at 670 (noting the superior competence of the Argentine courts to decide claims governed by Argentine law); *U.S.O. Corp.*, 547 F.3d at 751 ("[T]he law applicable to the issues in the case is almost certainly Japanese law, with which American judges have little familiarity.").

In sum, we agree with the district court that the crux of this case is two Bulgarian companies' dispute over a Bulgarian loan contract, so the balance of private and public interest factors favor resolving the case in Bulgaria.

### III. Conclusion

After carefully considering Stroitelstvo's arguments concerning the adequacy of the Bulgarian legal system, the district court concluded that Bulgaria was an available, adequate forum to resolve this dispute over a Bulgarian loan contract. The court then balanced all of the relevant private and public interest factors, which strongly favored Bulgaria as the more convenient forum. The decision to dismiss the case on *forum non conveniens* grounds was not only well within the court's discretion, but also, we think, correct as a matter of common sense.

AFFIRMED.