In the

# United States Court of Appeals
## For the Seventh Circuit

No. 21-1224

INSTITUTO MEXICANO DEL SEGURO SOCIAL,

*Plaintiff-Appellant,*

*v.*

ZIMMER BIOMET HOLDINGS, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Indiana, South Bend Division.
No. 20-cv-00099 — **Damon R. Leichty**, *Judge.*

ARGUED OCTOBER 26, 2021 — DECIDED MARCH 21, 2022

Before FLAUM, ST. EVE, and KIRSCH, *Circuit Judges.*

ST. EVE, *Circuit Judge.* Between 2008 and 2013, Instituto Mexicano del Seguro Social ("IMSS") claims Zimmer Biomet Holdings, Inc. ("Zimmer Biomet") bribed Mexican government officials to sell unregistered medical products in Mexico. IMSS filed suit in Zimmer Biomet's home jurisdiction, the Northern District of Indiana, based on the alleged bribery. Zimmer Biomet successfully moved to dismiss the suit for *forum non conveniens*, arguing Mexico was the appropriate

venue in which to litigate. IMSS appeals, arguing both the district court misapplied the *forum non conveniens* analysis and the United Nations Convention Against Corruption ("UNCAC") precludes dismissal on such grounds. We affirm the judgment of the district court.

## I. Background

IMSS is the agency of the Mexican government tasked with purchasing medical products distributed to Mexican citizens. IMSS owns and operates various hospitals throughout Mexico which provide health care to tens of millions of Mexican citizens. Between 2008 and 2013, IMSS purchased medical products from Zimmer Biomet, an orthopedic medical device company. Zimmer Biomet, headquartered in Warsaw, Indiana and incorporated in Delaware, distributes its products in Mexico through Biomet 3i Mexico ("Biomet 3i"), an indirectly wholly owned subsidiary.

During this period, IMSS claims Zimmer Biomet orchestrated an international bribery scheme from its Indiana headquarters to facilitate the sale of unregistered medical products. Specifically, IMSS alleges Zimmer Biomet paid around $1 million in bribes to its "Mexican agents" who acted as "bagmen" and passed those bribes along to Mexican government officials. Zimmer Biomet personnel purportedly communicated with their employees in Mexico and traveled to and from Mexico to carry out the scheme. IMSS claims, had it known the medical products were unregistered or that Zimmer Biomet was bribing government officials, it could not have purchased from Zimmer Biomet.

IMSS filed suit against Zimmer Biomet on January 30, 2020, in the United States District Court for the Northern

District of Indiana based on these allegations. IMSS brought three causes of action: two under Mexican law (breach of contract and violating the Law of Acquisitions, Leases and Services of the Public Sector) and one (fraud) for which the relief "is the same whether this claim is made pursuant to United States or Mexican law."

Zimmer Biomet moved to dismiss IMSS's complaint on August 10, 2020, under the doctrine of *forum non conveniens* and consented to service of process and personal jurisdiction in Mexico. In support of its motion, Zimmer Biomet submitted the declaration of José Ramón Cossío Díaz, a former Justice of the Mexico Supreme Court of Justice and current professor of constitutional law at El Colegio de México. In relevant part, Díaz opined litigation would be much more complicated in American courts than in Mexican courts due to the location of documents and witnesses and the burdens of authenticating evidence and translating documents and testimony from Spanish to English.

IMSS challenged Zimmer Biomet's motion, arguing in part the United States's ratification of the UNCAC precludes application of the *forum non conveniens* doctrine to the case. IMSS submitted the declaration of Sergio Antonio Linares Pérez, a Mexican attorney. Pérez asserted there was no equivalent to American discovery procedures under Mexican law and, should the case proceed in Mexican courts, the parties would be limited to the evidence currently in their possession. Based on Pérez's experience, litigation in American courts is more expedient than in Mexican courts. IMSS also submitted evidence of previous government investigations into Zimmer Biomet's global practices, including a 2007 deferred prosecution agreement with the United States Attorney's Office in New

Jersey, a 2012 complaint and letter from the Department of Justice ("DOJ"), and a 2017 deferred prosecution agreement between Zimmer Biomet, the Securities and Exchange Commission ("SEC"), and the DOJ.

The district court disagreed with IMSS's interpretation of the UNCAC and sided with Zimmer Biomet, dismissing IMSS's complaint based on *forum non conveniens* on January 5, 2021. IMSS timely appealed.

## II. Discussion

IMSS appeals two aspects of the district court's decision. First, IMSS argues the district court misapplied the *forum non conveniens* doctrine. Second, IMSS claims the district court failed to appreciate the UNCAC's impact upon the *forum non conveniens* doctrine. We address, and reject, each in turn.

### A. *Forum Non Conveniens*

The doctrine of *forum non conveniens*, effectively a supervening venue provision, empowers a court to dismiss a suit when litigating in that court as opposed to an alternative forum unreasonably burdens the defendant. *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 429–30 (2007); *U.S.O. Corp. v. Mizuho Holding Co.*, 547 F.3d 749, 750 (7th Cir. 2008). The central focus of the *forum non conveniens* inquiry is convenience. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 249 (1981); *see also Fischer v. Magyar Allamvasutak Zrt.*, 777 F.3d 847, 866 (7th Cir. 2015).

A district court may exercise its discretion and dismiss a case for *forum non conveniens* when (1) "an alternative forum has jurisdiction to hear [the] case" and (2) trial in the chosen forum would prove, disproportionate to the plaintiff's convenience, oppressive and vexatious to the defendant; or "the

chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems." *Sinochem*, 549 U.S. at 432 (quoting *Am. Dredging Co. v. Miller*, 510 U.S. 443, 447–48 (1994)) (alterations in original); *see also Deb v. SIRVA, Inc.*, 832 F.3d 800, 805 (7th Cir. 2016). The latter half of this analysis requires the district court to balance the public and private interest factors of the alternative forum. *Fischer*, 777 F.3d at 868. The defendant—here, Zimmer Biomet—bears the burden of persuading the district court dismissal for *forum non conveniens* is appropriate. *In re Ford Motor Co.*, 344 F.3d 648, 652 (7th Cir. 2003). "The doctrine of forum non conveniens … is an exceptional one that a court must use sparingly." *Deb*, 832 F.3d at 805.

While courts ordinarily accord a plaintiff's choice of forum strong deference, *Clerides v. Boeing Co.*, 534 F.3d 623, 628 (7th Cir. 2008), this is not the case where, as here, the plaintiff is foreign, *Piper Aircraft Co.*, 454 U.S. at 256. Dilution of the presumption in favor of IMSS's choice of forum is not bias against foreign plaintiffs but, instead, a "practical observation about convenience." *Deb*, 832 F.3d at 806; *see also Sinochem*, 549 U.S. at 430; *In re Factor VIII or IX Concentrate Blood Prods. Litig.*, 484 F.3d at 956.

This suit presents a slightly unusual twist. IMSS, a foreign plaintiff, elected to file suit in the Northern District of Indiana, Zimmer Biomet's home. In such circumstances, "the presumption in favor of giving plaintiffs their choice of court is little more than a tie breaker" as we have little reason to suppose either party faces discrimination by being forced to litigate in its home court. *Abad v. Bayer Corp.*, 563 F.3d 663, 667 (7th Cir. 2009); *see also Chang v. Baxter Healthcare Corp.*, 599 F.3d 728, 735 (7th Cir. 2010); *Cap. Mkts. Int'l, Ltd. v.*

*Geldermann*, 182 F.3d 921 (Table), 1999 WL 439405, at *3 (7th Cir. 1999). Here, "all really that the court is left to weigh is the relative advantages and disadvantages of the alternative forums." *Abad*, 563 F.3d at 667.

Dismissal for *forum non conveniens* is left to "the sound discretion of the trial court" and "may be reversed only when there has been a clear abuse of discretion." *Deb*, 832 F.3d at 805 (quoting *Piper Aircraft Co.*, 454 U.S. at 257); *see also Fischer*, 777 F.3d at 866. In evaluating the district court's exercise of discretion, we consider whether it properly assigned Zimmer Biomet the burden of "demonstrate[ing] that a finding of forum non conveniens was within the realm of appropriate conclusions." *Deb*, 832 F.3d at 810. While a district court abuses its discretion where it ignores relevant public and private interest factors, *Stroitelstvo Bulgaria Ltd. v. Bulgarian-Am. Enter. Fund*, 589 F.3d 417, 424 (7th Cir. 2009), when it considers and reasonably balances these factors, "its decision deserves substantial deference," *Piper Aircraft Co.*, 454 U.S. at 257; *see also Fischer*, 777 F.3d at 866. Given the fact-intensive, multifactor analysis involved in a *forum non conveniens* determination, we "take care not to substitute our own judgment for that of the district court." *Fischer*, 777 F.3d at 866 (cleaned up). Here, the district court did not abuse its discretion dismissing the case for *forum non conveniens*.

### 1. Available Alternative Forum

The availability of an alternative forum is a two-part inquiry examining both availability and adequacy. *Deb*, 832 F.3d at 807; *In re Bridgestone/Firestone, Inc.*, 420 F.3d 702, 704 (7th Cir. 2005). Zimmer Biomet consented to service of process and personal jurisdiction in Mexico, which satisfies availability. *Deb*, 832 F.3d at 807; *Fischer*, 777 F.3d at 867. At oral

argument, IMSS conceded Mexican courts constitute an available forum, so we spend no more time on that issue here.

An alternative forum is adequate where "the parties will not be deprived of all remedies or treated unfairly." *Deb*, 832 F.3d at 807; *Fischer*, 777 F.3d at 867. An alternative forum is inadequate only where "the remedy provided" is "so clearly inadequate or unsatisfactory that it is no remedy at all." *Piper Aircraft Co.*, 454 U.S. at 254; *see also Fischer*, 777 F.3d at 866. Even where "the relief [is] not [ ] as comprehensive or as favorable as a plaintiff might obtain in an American court," the alternative forum is still adequate. *Chang*, 599 F.3d at 736 (quoting *Stroitelstvo*, 589 F.3d at 421).

IMSS claims Mexican courts are inadequate based on their unwillingness to "address the responsibility of foreign parents of Mexican agents" and less fulsome discovery procedures. Notably, IMSS does not assert a remedy is impossible in Mexican courts, merely that it is less likely. First, it would be odd to subject Zimmer Biomet to litigation in an inconvenient forum merely to increase the chances it will lose on the merits. *See Chang*, 599 F.3d at 736. Second, and more damning to IMSS's argument, differences in law between forums "should ordinarily not be given conclusive or even substantial weight in the *forum non conveniens* inquiry." *Piper Aircraft Co.*, 454 U.S. at 247. A forum is not inadequate merely because its law is less favorable to the plaintiff. *Deb*, 832 F.3d at 807; *Abad*, 563 F.3d at 667. Indeed, two of IMSS's causes of action arise under Mexican law and, according to IMSS's own complaint, the remedy for the third is identical in the United States and Mexico. There is no risk IMSS will be wholly deprived of a remedy by litigating in Mexican courts.

**2. Private Interest Factors**

Courts look to four private interest factors when evaluating the viability of an alternative forum. These include the "(1) relative ease of access to sources of proof; (2) availability of compulsory process and costs for attendance of witnesses; (3) possibility of viewing the premises, if appropriate; and (4) other practical issues, including the ease of enforcement of any ultimate judgment." *Deb*, 832 F.3d at 807. The district court correctly determined these private interest factors "tilt strongly towards dismissal."

The district court concluded the bulk of witnesses and evidence are located in Mexico. Based on IMSS's own pleading, IMSS is an agency of the Mexican government, Biomet 3i is located in Mexico, the purported contracts were executed in Mexico between Mexican parties, "Mexican agents" carried out the alleged bribery scheme, and any injury occurred in Mexico. IMSS first claims Zimmer Biomet failed to provide evidence of the relative volume of witnesses and evidence in each forum. However, Zimmer Biomet is not required to specifically indicate what evidence would be out of reach if litigation proceeded in IMSS's chosen forum to succeed on a *forum non conveniens* motion. Instead, Zimmer Biomet was only obligated to "provide enough information to enable the District Court to balance the parties' interest." *Piper Aircraft Co.*, 454 U.S. at 258; *see also Macedo v. Boeing Co.*, 693 F.2d 683, 689 (7th Cir. 1982) ("[A] list of witnesses and summary of expected testimony is unnecessary ...."). IMSS's own complaint arguably provided sufficient information to permit the district court to reach its conclusion, but Zimmer Biomet also offered Díaz's testimony that "if the action is filed with the Indiana courts it would be much more complicated tha[n] if it

is brought with Mexican courts" due, in part, to the location of documents and witnesses.

IMSS claims—based on Zimmer Biomet's cooperation with the 2017 SEC and DOJ investigations—the relevant evidence is already located in Indiana. First, given the breadth of IMSS's pleading and absence of detailed allegations, it is unclear to what degree the events subject to the 2017 investigations overlap with those in IMSS's complaint. Second, the 2017 DOJ deferred prosecution agreement notes Zimmer Biomet made its own employees available for interviews. There is no indication it included other evidence relevant to the present suit, such as the alleged contracts or interviews with IMSS employees or the "Mexican agents" purportedly acting as "bag men." Third, the district court expressly considered the materials from the 2017 investigations and nonetheless determined they were "fewer in number and secondary in relevance" to evidence in Mexico. IMSS points to nothing which would allow us to disturb this sound conclusion.

Nor did, as IMSS suggests, the district court ignore relevant evidence or arguments in reaching its decision. Indeed, the district court specifically referenced the evidence of other government investigations into Zimmer Biomet's global activities but found them less numerous and relevant than evidence located in Mexico. Merely because the district court disagreed about the weight and value of IMSS's evidence does not mean the court ignored it. The district court also expressly considered, and rejected, IMSS's argument about the comparative ease of obtaining evidence in the United States and Mexico. The district court acknowledged Pérez's opinion about discovery but correctly noted discrepancies in discovery procedures are immaterial to the *forum non conveniens* analysis.

Instead, the district court judged the hardship of transporting witness from Mexico to the United States, particularly in light of then-active COVID-19 travel restrictions, the more significant burden.

Finally, IMSS claims Zimmer Biomet engaged in impermissible forum shopping by seeking dismissal under *forum non conveniens*. First, by definition, all defendants seeking dismissal under *forum non conveniens* in hopes of landing in a more convenient (and arguably more favorable) forum are engaged in forum shopping. The *forum non conveniens* analysis focuses on which of the two available forums is objectively more convenient, not parties' subjective motivations for seeking a particular forum. Second, the possibility of reverse forum shopping by the defendant "ordinarily should not enter into a trial court's analysis of the private interests." *Piper Aircraft Co.*, 454 U.S. at 252 n.19.

### 3. Public Interest Factors

Courts analyze the following public interest factors when evaluating a *forum non conveniens* motion: (1) the "administrative difficulties stemming from court congestion"; (2) the "local interest in having localized disputes decided at home"; (3) the "interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action"; (4) the "avoidance of unnecessary problems in conflicts of laws or in the application of foreign law"; and (5) the "unfairness of burdening citizens in an unrelated forum with jury duty." *Fischer*, 777 F.3d at 868. We agree with the district court that these factors "overwhelmingly support" dismissal in favor of a Mexican venue.

Although administrative congestion has implications for both American and Mexican courts, and despite Pérez's assertion American courts have one-third the caseload burden of Mexican courts, we cannot say the district court abused its discretion in concluding the administrative burdens are comparatively less significant in Mexico. This is particularly true given that the volume of evidence and witnesses likely resides in Mexico.

IMSS characterizes its suit as presenting a "local controversy" to Indiana and claims the district court improperly discounted the United States's strong national interest in combating corruption. First, we are unconvinced an alleged scheme involving Biomet 3i, a company located in Mexico, bribing "Mexican agents," to enable them to sell medical devices in Mexico, to be used by Mexican doctors in Mexican hospitals on Mexican patients, through an agency of the Mexican government, pursuant to contracts executed in Mexico, presents a "local controversy" to Warsaw, Indiana, regardless where it was orchestrated. Second, while we accept the United States has some interest in malfeasance by its citizens abroad, IMSS fails to address the comparative nature of the interest inquiry. The district court found, and we see no reason to disagree, that Mexico's interest in this particular case is greater than that of the United States. *See, e.g.*, *Geldermann*, 1999 WL 439405, at *4 ("While we agree … that Illinois has a strong incentive to punish its citizens for … legal wrongs committed abroad, it was within the district court's discretion to conclude that the U.K.'s stronger interest in protecting its citizens from legal wrongs committed in England by foreign citizens makes England the more appropriate forum.").

Nor can we ignore the impropriety of asking an Indiana jury to sit on this case and apply Mexican law to events from which they are "highly attenuated." First, the "need to apply foreign law point[s] towards dismissal." *Piper Aircraft Co.*, 454 U.S. at 260. This is particularly true given Mexico's civil law system. *Fischer*, 777 F.3d at 871. Even accepting IMSS's contention that, for the claims at issue, Mexican law is essentially identical to Indiana law, Mexican courts are in a better position than American courts to apply Mexican law. *See Abad*, 563 F.3d at 670–71; *Stroitelstvo*, 589 F.3d at 426; *U.S.O. Corp.*, 547 F.3d at 751.

IMSS raises an underdeveloped argument that, in weighing the public interest factors, the district court ignored Mexico's "express policy statement" favoring venue in the United States. First, it is not clear why, in a *forum non conveniens* analysis focused on convenience, IMSS's policy preference is relevant. Second, we do not accept IMSS's venue decision as an expression of Mexico's policy preference. IMSS is one agency of the Mexican government. Without some support, it seems a stretch to claim IMSS is fully aware of, or empowered to speak to, the nuanced policy interest in the administration of the Mexican legal system, a national interest in addressing corruption, or the foreign relations among nations. IMSS points to nothing indicating its decision where to file a particular lawsuit is the product of the balance of Mexico's national interests as a whole.

### 4. Burden of Proof

IMSS's final argument is the district court failed to hold Zimmer Biomet to its burden of justifying dismissal for *forum non conveniens*. While IMSS is correct Zimmer Biomet bears the burden of proof, it is incorrect Zimmer Biomet failed to

offer evidence of inconvenience. Zimmer Biomet pointed first and foremost to IMSS's own complaint which, while markedly broad and non-specific, clearly indicates the gravitational pull of the case points decisively towards Mexico. Zimmer Biomet also offered Díaz's affidavit, in which Díaz gave several opinions relevant to Zimmer Biomet's burden. Notably, Díaz observed litigation would be much more complicated if brought in the United States than if brought in Mexico.

Moreover, the district court acknowledged "Zimmer Biomet carrie[d] the burden of overcoming [the] presumption in favor of [IMSS's] choice [of forum]." IMSS offers nothing to indicate the district court improperly shifted the burden from Zimmer Biomet to prove why dismissal was appropriate to IMSS to defend its choice of forum.

* * *

The district court neither ignored nor improperly balanced the relevant public and private interest factors. Consequently, its decision enjoys substantial deference. The district court did not abuse its discretion in applying the *forum non conveniens* analysis.

**B. The United Nations Convention Against Corruption**

The UNCAC is a multilateral treaty targeting international corruption. *See* United Nations Convention Against Corruption pmbl., Dec. 10–11, 2003, S. Treaty Doc. No. 109-6, 2349 U.N.T.S. 42146 (entered into force Dec. 14, 2005) [hereinafter UNCAC]. The stated purpose of the UNCAC includes the promotion and strengthening of "measures to prevent and combat corruption" and the promotion, facilitation, and support of "international cooperation and technical assistance in

the prevention of and fight against corruption." UNCAC art. 1(a)–(b). Both the United States and Mexico, along with 187 other nations, are parties (referred to individually as "State Parties") to the UNCAC. *See* United Nations Office on Drugs and Crime, Signature and Ratification Status, https://www.unodc.org/unodc/en/corruption/ratification-status.html (last visited Mar. 9, 2022). The United States ratified the UNCAC on October 30, 2006.

"The interpretation of a treaty, like the interpretation of a statute, begins with its text." *GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637, 1645 (2020) (quoting *Medellín v. Texas*, 552 U.S. 491, 506 (2008)). To aid our interpretation of the text, we also look to the negotiating and drafting history and the postratification understanding of signatory nations. *GE Energy Power*, 140 S. Ct. at 1645–46; *Water Splash, Inc. v. Menon*, 137 S. Ct. 1504, 1511 (2017) (citing *Medellín*, 552 U.S. at 507). We review the district court's interpretation of the UNCAC de novo. *VLM Food Trading Int'l, Inc. v. Ill. Trading Co.*, 811 F.3d 247, 251 (7th Cir. 2016).

IMSS claims the UNCAC alters the *forum non conveniens* analysis, but not all international treaties constitute binding federal law. *Medellín*, 552 U.S. at 504. Treaties are "equivalent to an act of the legislature," and thus self-executing, when they "operate[] of [themselves] without the aid of any legislative provision." *Id*. at 505 (quoting *Foster v. Neilson*, 27 U.S. 253, 254 (1829), *overruled on other grounds*, *United States v. Percheman*, 32 U.S. 51 (1833)). Treaties which are not self-executing "'can only be enforced pursuant to legislation to carry them into effect.'" *Medellín*, 552 U.S. at 505 (quoting *Whitney v. Robertson*, 12 U.S. 190, 194 (1888)). The Supreme Court has "long recognized" this distinction. *Medellín*, 552 U.S. at 504.

Although the UNCAC comprises an international commitment, it is not domestic law unless Congress enacted implementing legislation or "the [UNCAC] itself conveys an intention that it be 'self-executing' and is ratified on these terms." *Id*. at 505 (quoting *Igartua-De La Rosa v. United States*, 417 F.3d 145, 150 (1st Cir. 2005) (en banc)). Neither are the case.

The United States ratified the UNCAC subject to the following declaration:

> [T]he provisions of the [UNCAC] (with the exception of Articles 44 and 46) are non-self-executing.

UNCAC Declarations and Reservations; S. Exec. 109-18 at 10. Apart from provisions irrelevant to the present suit, the UNCAC is expressly non-self-executing. Nor did Congress pass legislation implementing the UNCAC. *Id*. at 6 ("No implementing legislation is required for the [UNCAC]."). The UNCAC is not binding federal law. This alone dooms IMSS's argument under the treaty.

### III. Conclusion

For these reasons, we AFFIRM the judgment of the district court.